**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHANIE CLIFFORD, | : | |
| | : | Case No. 2:19-cv-00119 |
| Plaintiff, | : | |
| | : | Judge Michael H. Watson |
| v. | : | |
| | : | Magistrate Judge Elizabeth Preston Deavers |
| SHANA M. KECKLEY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

**DEFENDANT TERRY L. MOORE'S MOTION TO DISMISS**

---

Defendant Terry L. Moore, by and through counsel, hereby moves to dismiss all claims against him pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has failed to state any claims against Defendant Moore upon which relief can be granted, and thus Defendant Moore is entitled to judgment in his favor. The grounds for this motion are more fully set forth in the accompanying Memorandum in Support.

Respectfully submitted,

*/s/ Larry H. James*
Larry H. James (0021773)
Christopher R. Green (0096845)
Natalie P. Bryans (0097697)
**Crabbe, Brown & James, LLP**
500 South Front Street, Suite 1200
Columbus, OH 43215
Telephone: (614) 229-4567
Facsimile: (614) 229-4559
ljames@cbjlawyers.com
cgreen@cbjlawyers.com
nbryans@cbjlawyers.com

*Counsel for Defendant Terry L. Moore*

<u>**MEMORANDUM IN SUPPORT**</u>

**I.    INTRODUCTION**

Plaintiff Stephanie Clifford, a.k.a. Stormy Daniels, filed her Complaint on January 14, 2019, against Columbus Division of Police ("CDP") Officers Shana M. Keckley, Whitney R. Lancaster, Mary S. Praither, and Steven G. Rosser in their individual capacities. (Doc. 1). On June 7, 2019, Plaintiff filed her Amended Complaint, in which she added as Defendants the City of Columbus ("the City") and CDP Commander Terry L. Moore in his individual capacity. (Doc. 24).

At approximately 10:00 p.m. on July 11, 2018, Plaintiff was scheduled to perform at Sirens, an adult entertainment venue located in Columbus, Ohio. (*Id.* at ¶¶ 19, 36). After her performance, Plaintiff was arrested for violations of Ohio Revised Code § 2907.40(C)(2) by Defendants Keckley, Lancaster, Praither, and Rosser (hereinafter the "on-scene officers"). (*Id.* at ¶¶ 36, 42, 44–45). Section 2907.40(C)(2) provides, in part, that "[n]o employee who regularly appears nude or seminude on the premises of a sexually oriented business, while on the premises of that sexually oriented business and while nude or seminude, shall knowingly touch a patron who is not a member of the employee's immediate family…." R.C. § 2907.40(C)(2).

On July 12, 2018, at 7:29 a.m., the City posted a statement on its official Twitter account about Plaintiff's arrest, which provided that three individuals had been arrested at Sirens "[a]s part of a long-term investigation into allegations of human trafficking, prostitution, along with other vice related violations." (Doc. 24, ¶ 64). Later that day, at 1:36 p.m., CDP released a statement from its Chief of Police indicating that Plaintiff's charges had been dismissed because an element of R.C. § 2907.40(C)(2) had not been satisfied. (*Id.* at ¶ 59).

Plaintiff asserts six causes of action based on her arrest: (1)  false arrest; (2) malicious

prosecution; (3) civil conspiracy; (4) abuse of process; (5) defamation[1]; and (6) municipal liability. Plaintiff's claims are based on both Ohio and federal law. She seeks over $1,000,000 in compensatory damages and over $1,000,000 in punitive damages, as well as interest, costs, and attorneys' fees. (*Id.* at p. 16). Plaintiff alleges that her arrest was politically motivated and completely unrelated to a legitimate police investigation. (*Id.* at ¶¶ 62, 65). She asserts that the on-scene officers were not at Sirens to investigate vice-related violations, but rather as part of a conspiracy to arrest her and falsely charge her with violating R.C. § 2907.40(C)(2) in retaliation for public statements she has made about President Trump. (*Id.* at ¶¶ 28, 65). She asserts that the on-scene officers are "avowed supporters of President Trump" who believed arresting her would damage her credibility. (*Id.* at ¶¶ 22–30). She also asserts that the on-scene officers conspired to arrest two other individuals working at Sirens at the same time so that the officers could deny Plaintiff's arrest was politically motivated. (*Id.* at ¶ 35).

Plaintiff alleges that Officers Rosser and Lancaster in particular have a pattern and practice of arresting and charging women with violations of R.C. § 2907.40(C)(2) without probable cause or by fabricating or omitting certain elements of the offense. (*Id.* at ¶ 15). She asserts that, before her appearance at Sirens, Officers Rosser and Lancaster often used R.C. § 2907.40(C)(2) to harass strip clubs and other adult entertainment venues throughout Columbus. (*Id.* at ¶¶ 13–18). Plaintiff alleges that Commander Moore, as Officers Rosser and Lancaster's supervisor, condoned their use of R.C. § 2907.40(C)(2). (*Id.* at ¶ 18). She also alleges that Commander Moore authorized the on-scene officers' actions at Sirens on the night of her performance. (*Id.* at ¶ 31).

---

[1] The Amended Complaint contains two causes of actions entitled "Fourth Cause of Action: Abuse of Process in Violation of Ohio Common Law." (Doc. 24, ¶¶ 85–88). The first of these, found in paragraphs 85 and 86, is in fact an abuse of process claim. The second, however, appears to be a cause of action for defamation based on the allegations in paragraphs 87 and 88, and this Motion shall address it as such.

Despite these bare, conclusory allegations, , Plaintiff has not alleged any facts that establish Commander Moore was involved in her arrest in any way. (*Id.* at ¶¶ 13–73). Likewise, Plaintiff has failed to allege any facts that demonstrate Commander Moore conspired with the on-scene officers or that he released false statements regarding Plaintiff's arrest. (*Id.*). Moreover, Commander Moore is specifically omitted from Plaintiff's cause of action for abuse of process. (*Id.* at ¶¶ 85–86). The only claims Plaintiff has asserted against Commander Moore are her claims for false arrest, malicious prosecution, civil conspiracy, and defamation, but Commander Moore is entitled to qualified and/or statutory immunity for each of those claims.

In short, Plaintiff fails to state any viable claim for relief against Commander Moore. Legally, Commander Moore is qualifiedly and/or statutorily immune from each of Plaintiff's claims. Factually, Plaintiff fails to allege enough facts for the Court to plausibly infer that she was injured by Commander Moore's conduct. For these reasons, Commander Moore's Motion to Dismiss should be granted.

## II.      STANDARD OF REVIEW

Defendant Moore moves for dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. To survive under Rule 12(b)(6), a party "must state a claim that is plausible on its face." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). This means that "the factual allegations must 'raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he court must be able to draw a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "[a] complaint [is not sufficient] if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). During a 12(b)(6) review, a complaint is "viewed in the light most

favorable" to the claimant and "all reasonable inferences are drawn in [her] favor." *Gavitt*, 835 F.3d at 639–40. However, a party must put forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court, therefore, need not accept legal conclusions as true, even if they are couched as facts. *Id.* Furthermore, in cases involving multiple defendants, the plaintiff must allege facts for **each** claim made against **each** individual defendant that, if proved at trial, establish that the plaintiff is entitled to relief against *that* individual defendant. *See Iqbal*, 556 U.S. at 676.

## III.    PLAINTIFF'S FEDERAL CLAIMS SHOULD BE DISMISSED

Plaintiff asserts claims for false arrest, malicious prosecution, and civil conspiracy against Commander Moore under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments. Because Plaintiff fails to allege facts sufficient to establish each of these claims or to overcome Commander Moore's qualified immunity, they should be dismissed accordingly.

### A.    Plaintiff fails to state claims for false arrest and malicious prosecution under the Fourth Amendment, the Fourteenth Amendment, or § 1983.

#### 1.    *The Fourteenth Amendment is inapplicable to Plaintiff's false arrest and malicious prosecution claims.*

Though the Amended Complaint references the Fourteenth Amendment's due process clause, Plaintiff has failed to provide adequate support for a claim of violation of due process. Courts have long held that where a specific Amendment provides an explicit textual source of constitutional protection against a type of governmental conduct, that Amendment—and not the more generalized notion of substantive due process—must be the guide for analyzing such claims. *Wilson v. Collins*, 517 F.3d 421, 428 (6th Cir. 2008); *Thacker v. City of Columbus*, 328 F.3d 244, 258 (6th Cir. 2003). It is also well-settled in the Sixth Circuit that the Fourteenth Amendment may not serve as the basis for § 1983 claims for either false arrest or malicious prosecution. *See, e.g., Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005) (discussing false arrest

claims); *Darrah v. City of Oak Park*, 255 F.3d 301, 308 (6th Cir. 2001) (citing, inter alia, *Albright v. Oliver*, 510 U.S. 266, 275 (1994) (plurality opinion)) (discussing malicious prosecution claims). Here, because the Fourth Amendment provides an explicit textual source for Plaintiff's claims, her claims must be analyzed under that Amendment.

> 2.      *Plaintiff fails to allege that Commander Moore participated in her arrest or prosecution.*

To establish a claim under § 1983 against a specific defendant, a plaintiff must plead sufficient facts to demonstrate that each government official "through the official's **own** individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citing, inter alia, *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978)) (emphasis added). Thus, the doctrine of *respondeat superior* may not serve as a basis for imposing liability under § 1983. *Monell*, 436 U.S. at 691; *Iqbal*, 556 U.S. at 676–77. In *Iqbal*, the Supreme Court explained:

> In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.

*Iqbal*, 556 U.S. at 677. In other words, where a supervisor-subordinate relationship is involved, a plaintiff must plead facts that show a causal connection between the supervisor and the unconstitutional conduct of the subordinate. *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 349–50 (6th Cir. 2007), *abrogated on other grounds by Bailey v. City of Ann Arbor*, 860 F.3d 382 (6th Cir. 2017). "Supervisory liability under § 1983 must be premised upon active behavior, not a failure to act." *Mitchell v. City of Hamilton*, No. 1:11-CV-764, 2012 WL 701173, at *3 (S.D. Ohio Mar. 1, 2012) (citing *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002)). "At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly

acquiesced in the unconstitutional conduct of the offending officers." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)).

This Court should dismiss Plaintiff's false arrest claim because the facts as alleged do not state a claim upon which relief can be granted. On a false arrest claim, "where an officer merely provides information and neither participates in the arrest, nor directs others to effectuate the arrest, he cannot be liable for false arrest." *Lozada v. Wilmington Dep't of Police*, 2008 WL 1994870, *4 (E.D. Pa. May 5, 2008) (citing reference omitted); *see also Jacob v. Township of W. Bloomfield*, 192 F.App'x 330, 336 (6th Cir. 2006). Here, Plaintiff fails to allege that Commander Moore directed, controlled, or in any way participated in her arrest. Rather, Plaintiff alleges that it was Officers Keckley, Lancaster, Praither, and Rosser who arrested her. (Doc. 24, ¶¶ 42, 44). She does not allege that Commander Moore handcuffed her, detained her, or transported her in a police cruiser, nor does she allege that he assisted in such acts or was even ***aware*** of her arrest—indeed, she does not even allege that Commander Moore was present at Sirens the night of July 11, 2018. In fact, Plaintiff's only allegations against Commander Moore regarding her arrest are that he "condoned" a policy and practice that resulted in the alleged violation of her rights and "authorized the actions of the Vice Unit officers Keckley, Lancaster, Praither, and Rosser on the night of July 11m [sic] 2018 at Sirens." (*Id.* at ¶¶ 17, 31). But these allegations are conclusory, unsupported by any factual averments, and do not meet the standards set forth in *Twombly* or *Iqbal*.

Moreover, as the Sixth Circuit recognizes, general allegations regarding officer training "are more appropriately submitted as evidence to support a failure-to-train theory against the [government entity itself], and not the supervisors in their individual capacities." *Mitchell v. City of Hamilton*, No. 1:11-CV-764, 2012 WL 701173, at *4 (S.D. Ohio Mar. 1, 2012) (quoting *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 543–44 (6th Cir. 2008)). In short, even if Plaintiff's allegation

that Commander Moore "condoned" the practice complained of here was sufficient to establish supervisory liability, Plaintiff nevertheless fails to meet the Rule 12(b)(6) threshold. Accordingly, her false arrest claim should be dismissed.

Plaintiff's malicious prosecution claim fails for the same reason. The Sixth Circuit has held that a malicious prosecution claim brought under § 1983 "must fail against a defendant who did not make, influence, or participate in the decision to prosecute." *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007) (citing references omitted). In this case, Plaintiff alleges that "Defendants charged [Plaintiff]…with first-degree misdemeanor violations of R.C. 2907.40(C)(2)" and that she was "damaged as a result of defendant' [sic] wrongful acts." (Doc. 24, ¶¶ 31, 81). However, the Amended Complaint is devoid of facts supporting these conclusory allegations against Commander Moore. Plaintiff does not allege that Commander Moore made, influenced, or participated in the decision to prosecute Plaintiff—again, Plaintiff does not even assert that Commander Moore was present at the time of her arrest. Absent any allegations suggesting Commander Moore was personally involved in her arrest and prosecution, Plaintiff fails to state a cognizable malicious prosecution claim against Commander Moore. It should therefore be dismissed.

> 3. *Plaintiff's claims are foreclosed because there was probable cause to arrest and prosecute her.*

Furthermore, even if Plaintiff has pleaded facts sufficient to show that Commander Moore was personally involved in her arrest and/or prosecution, Plaintiff's claims are still barred because both were based on probable cause. To state a claim for false arrest or malicious prosecution under the Fourth Amendment, a plaintiff must show, at a minimum, that there was lack of probable cause to arrest and/or prosecute her. *See Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014) (discussing false arrest); *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003) (citing

*Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001)) (discussing malicious prosecution). Accordingly, the existence of probable cause is an absolute bar to § 1983 claims for false arrest and malicious prosecution. *See McKinley v. City of Mansfield*, 404 F.3d 418, 444–45 (6th Cir. 2005) (discussing malicious prosecution); *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (discussing false arrest).

Probable cause exists when the "facts and circumstances within the officer's knowledge…are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Whether probable cause exists is "assessed under a reasonableness standard based on 'an examination of all facts and circumstances within an officer's knowledge at the time of an arrest.'" *Thacker*, 328 F.3d at 255 (quoting *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003)). Probable cause only requires the ***probability*** of criminal activity, not a "prima facie" showing that a crime was committed. *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) ("The Fourth Amendment…necessitates an inquiry into possibilities, not certainty."). Thus, officers need not have proof of each element of an offense to have probable cause to arrest a suspect if the officers believe that a probability existed that the suspect committed an offense. *See Thacker*, 328 F.3d at 256.

Critically, a mistake of law or fact does not negate probable cause if the mistake was objectively reasonable. *See Heien v. North Carolina*, 135 S.Ct. 530, 539 (2014) ("The Fourth Amendment tolerates only reasonable mistakes, and those mistakes—whether of fact or of law—must be objectively reasonable."). "If the circumstances, viewed objectively, support a finding of probable cause, the arresting officer's actual motives are irrelevant." *Criss*, 867 F.2d at 262.

In this case, Plaintiff was arrested and charged for violating R.C. § 2907.40(C)(2) during her performance at an adult entertainment venue. (Doc. 24, ¶¶ 19, 43, 45). Under R.C. § 2907.40(C)(2), "[n]o employee who regularly appears nude or semi-nude on the premises of a sexually oriented business, while on the premises of that sexually oriented business and while nude or seminude, shall knowingly touch a patron who is not a member of the employee's immediate family." As used in R.C. § 2907.40(C)(2), an "employee" means any individual who performs any service on the premises of a sexually oriented business on a full-time, part-time, or contract basis. R.C. § 2907.40(A)(5).

The allegations in Plaintiff's Amended Complaint demonstrate that sufficient information existed for the on-scene officers to believe they had probable cause for an arrest based on R.C. § 2907.40(C)(2). Two of the on-scene officers—Officers Rosser and Lancaster—had significant experience investigating adult entertainment venues and issuing charges for violations of R.C. § 2907.40(C)(2). (Doc. 24, ¶¶ 13, 15). Plaintiff admits that she was arrested under that statute for allegedly putting her breasts in Officer Praither's face and for touching Officer Praither's buttocks and breasts. (*Id.* at ¶ 41). Plaintiff was an employee of Sirens at the time because she was performing a service on their premises. *See* R.C. § 2907.40(A)(15). Plaintiff also concedes that only one element of the statute wasn't satisfied: the fact that she doesn't regularly appear at Sirens. (Doc. 24, ¶¶ 50, 60). Accordingly, Plaintiff implicitly acknowledges that other elements of R.C. § 2907.40(C)(2) were satisfied: that she was on the premises of a sexually oriented business, that she was nude or semi-nude, and that she knowingly touched a patron who was not a member of her family.

Finally, the fact that Plaintiff's charges were ultimately dismissed does not discredit the existence of probable cause. *See Criss*, 867 F.2d at 262 ("A valid arrest based on then-existing

probable cause is not vitiated if the suspect is later found innocent."); *Holt v. Knox Cty., Tenn.*, No. 3:12-CV-465-PLR-CCS, 2014 WL 1784054, at *7 (E.D. Tenn. May 5, 2014) ("The fact that the charges were later dismissed has no bearing on whether the police had probable cause to arrest …in the first place."). Thus, the totality of these circumstances demonstrates that an objectively reasonable officer on the scene would have believed a probability existed that Plaintiff had violated R.C. § 2907.40(C)(2). The existence of probable cause therefore defeats Plaintiff's false arrest and malicious prosecution claims.

> 4. *Plaintiff fails to state a failure to intervene claim against Commander Moore.*

Finally, in Plaintiff's cause of action for false arrest, Plaintiff asserts that "Defendants falsely arrested [her] and failed to intervene in each other's obviously illegal actions." (Doc. 24, ¶ 77). To the extent Plaintiff is alleging a cause of action for failure to intervene, such a claim fails as a matter of law. To plead a claim for failure to intervene in a false arrest under § 1983, a plaintiff must show: (1) that the officer observed an unjustified arrest; and (2) had a realistic opportunity to intervene to prevent the harm from occurring. *Bunkley v. City of Detroit, Michigan*, 902 F.3d 552, 566 (6th Cir. 2018) (citing *Kaylor v. Rankin*, 356 F.Supp.2d 839, 850 (N.D. Ohio 2005)).

In this case, Plaintiff's Amended Complaint is devoid of allegations that show Commander Moore either observed or knew that she was being unjustifiably arrested. Commander Moore was not at Sirens when Plaintiff was arrested, nor did he have any knowledge Plaintiff's arrest was imminent or ongoing. Further, the Amended Complaint does not—and cannot—contain any plausible allegations that Commander Moore had the opportunity to prevent her arrest when there is no evidence that Commander Moore even knew her arrest was occurring. Plaintiff's failure to intervene claim should therefore be dismissed.

### B.     Plaintiff fails to state a claim for civil conspiracy.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). To properly plead a civil conspiracy claim under § 1983, a plaintiff must allege that: (1) a single plan existed; (2) the conspirators shared in a conspiratorial objective to deprive the plaintiff of her constitutional rights; and (3) an overt act was committed. *Faith Baptist Church v. Waterford Twp.*, 522 F.App'x 322, 328–29 (6th Cir. 2013) (citing *Revis*, 489 F.3d at 290)). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983." *Spadfore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

Plaintiff's allegations fall substantially short of this threshold. Plaintiff's sole allegation in support of this claim is that Commander Moore allegedly authorized the on-scene officers' actions before they went to Sirens. (Doc. 24, ¶ 31). Plaintiff does not plead any facts that would demonstrate that a conspiratorial plan existed between Commander Moore and the other Defendants, much less that Commander Moore shared a conspiratorial objective to deprive Plaintiff of her constitutional rights. Nor does Plaintiff identify what Commander Moore's role in the conspiracy was, or that he was involved in "taking steps to further the conspiracy." (*Id.* at ¶ 83). Plaintiff has not alleged any facts to show that Commander Moore participated in her arrest or even *knew* she was arrested; that he searched or seized her person and property; that he made **any** kind of statement in her paperwork, let alone false statements; that he made, influenced, or participated in the decision to prosecute her; or that he released public statements about her.

Consequently, because the allegations of unlawful acts committed by Commander Moore have been proven meritless, Plaintiff's conspiracy claim should be dismissed.

Moreover, Plaintiff's civil conspiracy claim is foreclosed by the intracorporate conspiracy doctrine. The Sixth Circuit has held that the "intracorporate conspiracy doctrine applies in § 1983 suits to bar conspiracy claims where two or more employees of the same entity are alleged to have been acting within the scope of their employment when they allegedly conspired together to deprive the plaintiff of their rights." *Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019). In other words, the intracorporate conspiracy doctrine provides that if defendants are members of the same entity, they are not separate "people" sufficient to form a conspiracy. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1868, 198 L. Ed. 2d 290 (2017).[2] Thus, public employees within the same government department do not conspire when they speak to one another and work together in their official capacities. *Id.*

Here, the individually named Defendants are all employees of the CDP who were acting within the scope of their employment as police officers. (Doc. 24, ¶¶ 10–12). Accordingly, under the intracorporate conspiracy doctrine, the officers were acting in their official capacities on behalf of CDP as a single person. Plaintiff's civil conspiracy claim should therefore be dismissed because she has failed to allege that an agreement existed between two or more persons.

**C.      Plaintiff's allegations are insufficient to overcome Defendant Moore's qualified immunity.**

This Court need only consider a qualified immunity defense if it finds a constitutional right was violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As discussed above, Commander Moore did not violate Plaintiff's constitutional rights. Consequently, qualified immunity is not an issue.

---

[2] Although *Ziglar* discusses the intracorporate conspiracy doctrine as it applies to 42 U.S.C. § 1985(3) claims, the Sixth Circuit treats § 1983 conspiracy claims the same as § 1985 claims. *See Jackson*, 925 F.3d at 818.

Assuming *arguendo* this Court believes that a constitutional violation has occurred, Commander Moore is nevertheless entitled to qualified immunity. The doctrine of qualified immunity protects police officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person about have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity applies unless it is obvious that no reasonably competent police officer would have believed his actions were lawful. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). Qualified immunity applies regardless of whether the error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). The doctrine is "an immunity from suit rather than a mere defense to liability." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

The burden of rebutting qualified immunity falls on the plaintiff once a defendant has raised the defense. *See Davenport v. Causey*, 512 F.3d 544, 550 (6th Cir. 2008). "Qualified immunity is a two-prong inquiry: (1) whether the plaintiff has shown a violation of a constitutional right, and (2) whether the constitutional right was 'clearly established' at the time of the violation." *Reid Mach. Inc. v. Lanzer*, 421 F.App'x 497, 501–02 (6th Cir. 2010) (citing *Pearson*, 555 U.S. at 230–32). "[T]o satisfy the second prong of the standard, a plaintiff must show that the right was clearly established in a 'particularized sense,' such that a reasonable officer confronted with the same situation would have known" his or her conduct would result in the violation of a constitutional right. *Chappell*, 585 F.3d at 907 (citing *Brosseau v. Haugen*, 543 U.S. 194, 199–200 (2004)). Dismissal is therefore appropriate unless the plaintiff has alleged facts showing "that *every* reasonable official would have understood that what he was doing violated that right."

*Thomas v. Plummer*, 489 F.App'x 116, 119 (6th Cir. 2012) (emphasis added) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "If officers of reasonable competence could disagree on this issue, immunity should be recognized." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995) (citing *Malley v. Briggs*, 475 U.S. 335, 349 (1986)).

The qualified immunity inquiry is an objective test that requires an officer's actions be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The relevant inquiry is "what a reasonable police officer would believe to be lawful based upon the information then possessed, not what the officers subjectively may have believed." *Boyd v. Baeppler*, 215 F.3d 594, 600 (6th Cir. 2000)*. In making this determination, a court must consider whether there is any prior caselaw with facts similar to those alleged by the plaintiff that demonstrates the officer's alleged actions are unconstitutional. *Ryburn v. Huff*, 565 U.S. 469, 473–74 (2012). The lack of any such caselaw establishes that the officer is entitled to qualified immunity. *Id.* Additionally, the existence of caselaw even ***tangentially*** demonstrating that the officer's actions were arguably constitutional supports a finding of qualified immunity. *Id.*

Here, Plaintiff fails to plead facts sufficient to overcome Commander Moore's qualified immunity. For one, viewing the evidence in a light most favorable to Plaintiff, she cannot show that a constitutional violation occurred. Moreover, Plaintiff cannot establish that Commander Moore's conduct was objectively unreasonable in light of her clearly established rights. Rather, the opposite is true. A reasonable officer in the Defendants' situation could not have known that R.C. § 2907.40(C)(2) did not apply to Plaintiff during her performance at Sirens. No case law existed at the time of her arrest that indicated a guest performer could not be liable under the statute. In fact, the controlling authority in the Sixth Circuit is—and was as of the date of Plaintiff's

14

performance—that R.C. § 2907.40(C)(2) applies to **all** performers without exception. In *84 Video/Newsstand, Inc. v. Sartini*, the Sixth Circuit considered a First Amendment challenge to R.C. § 2907.40(C)(2). 455 F.App'x 541, 554 (6th Cir. 2011). The plaintiffs in *84 Video/Newsstand* argued that the statute was overbroad to the extent that it prohibits employees who are nude or seminude from touching each other during a performance. *Id.* at 561. In holding that the statute did not violate the First Amendment, the Sixth Circuit summarized R.C. § 2907.40(C)(2) as follows:

> "The statute states:
> No employee who regularly appears nude or seminude on the premises of a sexually oriented business, while on the premises of that sexually oriented business and while nude or seminude, shall knowingly touch a patron ... or another employee ... or the clothing of a patron ... or another employee ... or allow a patron ... or another employee ... to touch the employee or the clothing of the employee.
> Ohio Rev.Code Ann. § 2907.40(C)(2). The law thus prohibits **any performer** who is nude or seminude from touching or being touched by another performer, whether the second performer is clothed or not."

*Id.* (emphasis added; omissions in original). The Sixth Circuit also described the statute as "limiting physical contact with and between **nude or semi-nude performers**." *Id.* at 544 (emphasis added). Crucially, at no point in its opinion did the Sixth Circuit indicate that R.C. § 2907.40(C)(2) might apply differently depending how many times a performer appeared nude or seminude on the premises of a specific business.

In her Amended Complaint, Plaintiff acknowledges that she was indeed a performer at Sirens, albeit a "special guest performer." (Doc. 24, ¶ 50). And performers—even special guest performers—are considered "employees" of sexually oriented businesses such as Sirens. *See* R.C. § 2907.40(A)(5) ("'Employee' means any individual who performs **any** service on the premises of a sexually oriented business on a full-time, part-time, or contract basis, **regardless of whether the individual is denominated an employee, independent contractor, agent, or otherwise**....")

(emphasis added). Plaintiff also alleges that the on-scene officers arrested her for her conduct *as a performer* at Sirens, and that she was nude or semi-nude at the time (Doc. 24, ¶¶ 36, 41, 49–50, 60). Based on these facts, Plaintiff's constitutional rights were not violated and the Defendants' conduct towards her was objectively reasonable in light of existing case law. Commander Moore is therefore entitled to qualified immunity and Plaintiff's federal claims against him should be dismissed.

## IV.     PLAINTIFF'S CLAIMS UNDER OHIO LAW SHOULD BE DISMISSED.

Plaintiff's state law claims against Commander Moore for false arrest, malicious prosecution, and defamation[3] fail for the same reasons her federal claims fail. First, the Amended Complaint is devoid of factual allegations sufficient to establish Plaintiff's claims under Ohio law. Second, Commander Moore is entitled to immunity pursuant to R.C. § 2744.03(A)(6) for each such claim.

### A.     Plaintiff fails to state claims for false arrest, malicious prosecution, and defamation under Ohio law.

#### 1.     *Plaintiff's false arrest claim should be dismissed because Plaintiff fails to allege that Commander Moore detained her.*

"Under Ohio law, a successful false arrest claim requires proof of '(1) a detention of the person, and (2) an unlawful detention.'" *Thacker v. City of Columbus*, 328 F.3d 244, 261 (6th Cir. 2003) (quoting *Faulkner v. Faulkner*, No. S-99-008, 2000 WL 5910, at *1 (Ohio Ct. App. Jan. 7, 2000)). "The tort does not require proof of malice, motive or lack of probable cause." *Id.* (quoting *Tucker v. Kroger Co.*, 726 N.E.2d 1111, 1115 (Ohio Ct. App. 1999)). Here, even accepting the allegations in the Amended Complaint as true, Plaintiff has failed to allege that Commander Moore

---

[3] Plaintiff's state law claim for abuse of process is only directed at the on-scene officers and consequently will not be addressed by Commander Moore.

was present at the time of her arrest, let alone the person who detained her. Accordingly, her state law claim for false arrest should be dismissed.

> 2. *Plaintiff's malicious prosecution claim should be dismissed because Commander Moore did not institute or continue the prosecution against her and because the prosecution was supported by probable cause.*

To succeed on a malicious prosecution claim under Ohio law, a plaintiff must prove that (1) the defendant harbored malice in instituting or continuing the prosecution; (2) the prosecution was not supported by probable cause; and (3) the prosecution was terminated in the plaintiff's favor. *Rogers v. Barbera*, 164 N.E.2d 162, 163 (Ohio 1960), at syllabus. "Malice" in the context of a malicious prosecution claim means that the prosecution was pursued for "an improper purpose, or [for] any purpose other than the legitimate interest of bringing an offender to justice." *Criss v. Springfield Tp.*, 564 N.E.2d 440, 443 (Ohio 1990). If probable cause to arrest and prosecute exists, however, then a claim for malicious prosecution will not lie, even if a plaintiff has established actual malice. *Waller v. Foxx*, No. C-810568, 1982 WL 4753, at *3 (Ohio Ct. App. Oct. 6, 1982) (citing *Perry v. Adjustable Awning, Inc.*, 192 N.E.2d 672, 674 (Ohio Ct. App. 1962)).

None of Plaintiff's factual allegations allow for a reasonable inference that Commander Moore instituted or continued a prosecution against her, let alone that he did so with malicious intent. *See* Section III.A.2, *supra*. Moreover, Plaintiff's malicious prosecution claim cannot lie because probable cause existed for her arrest, as detailed above. *See* Section III.A.3, *supra*. Consequently, even if Plaintiff has sufficiently alleged that Commander Moore acted maliciously, her claim for malicious prosecution must be dismissed due to the existence of probable cause.

> 3. *Plaintiff's defamation claim should be dismissed because Commander Moore did not make or publish any statements about her, let alone false or malicious statements.*

Under Ohio law, to establish a claim of defamation, a plaintiff must show: (1) the defendant made a false and defamatory statement; (2) the defendant published that statement to a third party;

(3) the plaintiff was injured as a result; and (4) the defendant acted with the requisite degree of fault. *See, e.g., Celebrezze v. Dayton Newspapers, Inc.*, 535 N.E.2d 755, 759 (Ohio Ct. App. 1988). In this case, Plaintiff asserts that Defendants defamed her by "maliciously releasing false statements to public newspapers and broadcasters and on social media platforms strongly implying [she] was engaged in immoral conduct or wrongdoing, and/or vice related relations." (Doc. 24, ¶ 88). She also alleges she was defamed when Defendants "announc[ed] details of her arrests for 'illegal sexually oriented activity in a sexually oriented business.'" (*Id.*).

However, there is nothing in the Amended Complaint to support these allegations against Commander Moore. For one, Plaintiff does not allege that Commander Moore himself made or published false and defamatory statements about her to ***any*** source, let alone to a public newspaper, broadcaster, or social media platform. Plaintiff also fails to plead any allegations that would demonstrate Commander Moore acted with the requisite degree of fault necessary to establish a defamation claim. For these reasons, Plaintiff's defamation claim should be dismissed.

**B.    Plaintiff's allegations are insufficient to overcome Commander Moore's immunity pursuant to R.C. § 2744.03(A)(6).**

Under Ohio law, an employee of a political subdivision is immune from liability on claims arising out of the performance of a governmental function unless one of the following applies:

(a) His or her acts or omissions were manifestly outside the scope of his or her employment or official responsibilities;
(b) His or her acts or omissions were done with malicious purpose, in bad faith, or in a wanton or reckless manner; or
(c) Liability is expressly imposed upon the employee by a section of the Ohio Revised Code.

R.C. § 2744.03(A)(6)(a)–(c). Section 2744.03(A)(6) creates a presumption of immunity that plaintiffs must overcome to establish liability. *Cook v. City of Cincinnati*, 658 N.E.2d 814, 821 (Ohio Ct. App. 1995). In this case, Plaintiff has specifically asserted that Commander Moore was

acting within the course and scope of his employment and has ***not*** alleged that any provision of the Revised Code expressly imposes liability. Dismissal of Plaintiff's state law claims against Commander Moore is therefore appropriate because she also fails to set forth facts demonstrating that Commander Moore acted maliciously, in bad faith, wantonly, or recklessly.

       The standard for establishing malice, bad faith, and wanton or reckless behavior under this exception is high. *See Fabrey v. McDonald Village Police Dep't*, 639 N.E.2d 31, 35 (Ohio 1994). Simply alleging that a defendant acted maliciously, in bad faith, or in a wanton or reckless manner is not enough to overcome the presumption of statutory immunity where there are no facts to support those allegations. *See Morrison v. Bd. of Trustees of Green Tp.*, 529 F.Supp.2d 807, 835 (S.D. Ohio 2007), *aff'd*, 583 F.3d 394 (6th Cir. 2009); *Lisboa v. Lisboa*, No. 95673, 2011 WL 319956, at *5 (Ohio Ct. App. Jan. 27, 2011) ("Appellant's complaint merely contains general conclusory statements that Brown acted maliciously and in bad faith. Such unsupported conclusions are not sufficient to withstand a motion to dismiss.").

Here, Plaintiff's accusation that "[d]efendants' acts or omissions were done with malicious purpose, in bad faith, or in a wanton or reckless manner" (Doc. 24, ¶ 72) constitutes a legal conclusion that must be supported by appropriate facts to survive review under Rule 12(b)(6). Plaintiff's Amended Complaint, however, does not meet this requirement. "Malice" is defined as "the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Cook*, 658 N.E.2d at 821. "Bad faith" denotes "a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." *Id.* "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson*

*v. Massillon*, 983 N.E.2d 266, 273 (Ohio 2012) (citing references omitted). "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* (citing references omitted).

The factual allegations in the Amended Complaint do not demonstrate that Commander Moore willfully or intentionally intended to injure Plaintiff, nor do they establish that Commander Moore had a dishonest purpose, ulterior motive, ill will, or intent to mislead or deceive Plaintiff. Furthermore, Plaintiff does not allege any facts that demonstrate Commander Moore owed her a duty of care or that he failed to exercise any care towards her. And finally, Plaintiff does not allege that Commander Moore was aware of a risk of harm to her or that he consciously disregarded or was otherwise indifferent to such a risk. Accordingly, Plaintiff's assertion that Commander Moore acted maliciously, in bad faith, or in a wanton or reckless manner is nothing more than a recitation of the language of R.C. § 2744.03(A)(6)(b) that is wholly unsupported by the facts as alleged. Therefore, the exception to immunity in R.C. § 2744.03(A)(6)(b) is also inapplicable. Consequently, because Plaintiff has failed to demonstrate that any of the exceptions in R.C. § 2744.03(A)(6) apply to Commander Moore, her state law claims against him should be dismissed.

## V.    CONCLUSION

For the reasons set forth above, Commander Moore respectfully asks the Court to dismiss the claims within Plaintiff's Amended Complaint (Doc. 24) against him for failure to state a claim.

Respectfully submitted,

*/s/ Larry H. James*

Larry H. James (0021773)
Christopher R. Green (0096845)
Natalie P. Bryans (0097697)
**Crabbe, Brown & James, LLP**
500 South Front Street, Suite 1200
Columbus, OH 43215
Telephone: (614) 229-4567
Facsimile: (614) 229-4559
ljames@cbjlawyers.com
cgreen@cbjlawyers.com
nbryans@cbjlawyers.com

*Counsel for Defendant Terry L. Moore*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed electronically on July 30, 2019. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Larry H. James*

Larry H. James (0021773)