**IN THE UNITED STATED DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHANIE CLIFFORD | : | |
| | : | |
| Plaintiff, | : | Case No. 2:19-cv-00119 |
| | : | |
| v. | : | Judge Michael H. Watson |
| | : | Magistrate Judge Elizabeth Preston Deavers |
| SHANA M. KECKLEY, ET AL. | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| STEPHANIE CLIFFORD | : | |
| | : | |
| Plaintiff, | : | Case No. 2:19-mc-00047 |
| | : | |
| v. | : | Judge Michael H. Watson |
| | : | Magistrate Judge Elizabeth Preston Deavers |
| DONALD J. TRUMP | : | |
| | : | |
| Defendant. | : | |

## JUDGMENT CREDITOR DONALD J. TRUMP'S NOTICE OF FILING MOTION RE: ATTORNEYS' FEES ORDER IN THE UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

Please take notice that Judgment Creditor Donald J. Trump ("Judgment Creditor") has filed in the United States District Court, Central District of California, a Motion to Certify the Attorneys' Fees Order for Registration in this District or, in the Alternative, to Correct and/or Strike the Central District of California Clerk's April 10, 2020 Notice (the "Motion"). A copy of the Motion has been filed with this Notice, as Exhibit "A". The hearing on the Motion is set for July 17, 2020, which is the earliest available hearing date at the time of filing the Motion. Judgment Creditor will provide this Court with notice of the Central District of California

{00108183;1}                                               1

Court's decision on the Motion, and renews its request that this Court stay the release of any of the funds it is holding in this matter until it has been determined who is entitled to the funds.

Respectfully submitted,

/s/ Dan J. Binau
DAN J. BINAU (0025376), *Trial Attorney*
Harris, McClellan, Binau & Cox P.L.L.
37 West Broad Street, Suite 950
Columbus, Ohio 43215
Telephone: (614) 464-2572
Facsimile:  (614) 464-2245
E-Mail: dbinau@hmbc.com
Counsel for Judgment Creditor, Donald J. Trump

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed through the Court's CM/EFC filing system this 5th day of May, 2020, which shall serve a copy of the document upon all registered counsel of record.

*/s/ Dan J. Binau*
DAN J. BINAU (0025376)
Counsel for Judgment Creditor, Donald J. Trump

1   HARDER LLP
    CHARLES J. HARDER (CA Bar No. 184593)
2   RYAN J. STONEROCK (CA Bar No. 247132)
3   132 S. Rodeo Drive, Fourth Floor
    Beverly Hills, California 90212
4   Telephone:   (310) 546-7400
5   Facsimile:   (310) 546-7401
    Email:       CHarder@HarderLLP.com
6                RStonerock@HarderLLP.com
7
    Attorneys for Defendant
8   DONALD J. TRUMP

9                   **UNITED STATES DISTRICT COURT**
                    **CENTRAL DISTRICT OF CALIFORNIA**
10

| 11   STEPHANIE CLIFFORD a.k.a. | Case No. 2:18-cv-06893-JLS-FFM |
|---|---|
| 12   STORMY DANIELS, | **NOTICE OF MOTION AND** |
| 13                  Plaintiff, | **MOTION OF DONALD J. TRUMP** |
| | **TO CERTIFY JUDGMENT FOR** |
| 14           v. | **REGISTRATION IN SOUTHERN** |
| | **DISTRICT OF OHIO OR, IN THE** |
| 15 | **ALTERNATIVE, TO CORRECT** |
| 16   DONALD J. TRUMP, | **AND/OR STRIKE CLERK'S APRIL** |
| 17                  Defendant. | **10, 2020 NOTICE** |
| 18 | [Declaration of Charles J. Harder and |
| 19 | Proposed Order Filed Concurrently |
| | Herewith] |
| 20 | |
| 21 | Assigned for All Purposes to the |
| | Hon. Josephine L. Staton |
| 22 | |
| 23 | **Date:       July 17, 2020** |
| | **Time:       10:30 a.m.** |
| 24 | **Location:  411 West 4th Street** |
| 25 | **Courtroom 10A, 10th Floor** |
| | **Santa Ana, CA 92701** |
| 26 | |
| 27 | Action Filed:  April 30, 2018 |
| 28 | |

EXHIBIT

A

1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 17, 2020, at 10:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 10A, located at the Ronald Reagan Federal Building and United States Courthouse, 411 West 4th Street, Santa Ana 92701, the Honorable Josephine L. Staton presiding, Defendant Donald J. Trump ("Mr. Trump") will move and hereby does move for an Order certifying for registration in the Southern District of Ohio the December 11, 2018 Order in this action [ECF No. 46] awarding Mr. Trump a total of $293,052.33 in attorneys' fees and sanctions against Plaintiff Stephanie Clifford (the "Attorneys' Fees Order") on the grounds that: (1) the Attorneys' Fees Order constitutes a valid, final judgment under Federal Rule of Procedure 58; and (2) there is good cause to certify the Attorneys' Fees Order pursuant to 28 U.S.C. § 1963. In the alternative, Mr. Trump requests that the Court correct and/or strike the Clerk's April 10, 2020 Notice regarding its prior certification of the Attorneys' Fees Order pursuant to Federal Rule of Civil Procedure 60(a).

This Motion shall be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and Declaration of Charles J. Harder, the anticipated reply papers, all materials that may be properly considered in connection with this motion, and oral argument at the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place, telephonically, on April 24, 2020. The parties were unable to reach a resolution and Plaintiff's counsel advised that Plaintiff will oppose this Motion. [Declaration of Charles J. Harder, ¶ 6.]

Dated: May 4, 2020                    HARDER LLP

By: _/s/ Charles J. Harder_
    CHARLES J. HARDER
    Attorneys for Defendant
    DONALD J. TRUMP

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................1

II.    STATEMENT OF FACTS .......................................................2

    A. The Court Dismisses This Action and Grants Mr. Trump Attorneys' Fees and Sanctions.............................................................2

    B. Mr. Trump Registers the Attorneys' Fees Order in the Southern District of Ohio After Ms. Clifford Settles Her Case Against the City of Columbus, Ohio.................................................................3

    C. Ms. Clifford Challenges Mr. Trump's Registration of the Judgment Through Filings in the Central District of California ...........................5

III.   ARGUMENT ........................................................................6

    A. Legal Standard ...............................................................6

    B. The Attorneys' Fees Order is a Valid Judgment.................................6

       1. The Attorneys' Fees Order is a Judgment Under FRCP 58............6

       2. Ms. Clifford's Position is Contrary to Settled Law and Not Supported By Any of Her Cited Authorities ..................................8

       3. The Attorneys' Fees Order is Still a Judgment Even if Ms. Clifford's Incorrect Interpretation of the Law is Accepted ...........10

    C. The Attorneys' Fees Order is Final Because the Time to Appeal Has Expired.............................................................................10

    D. In the Alternative, There is Good Cause to Certify the Attorneys' Fees Order Pursuant to 28 U.S.C. § 1963 .........................................12

IV.   CONCLUSION....................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Best W. Int'l, Inc. v. AV Inn Assocs. 1, LLC*,
    2011 WL 13160912 (D. Ariz. Feb. 22, 2011)............................................. 13

*Browder v. Dir., Dep't of Corr. of Illinois*,
    434 U.S. 257 (1978)......................................................................................... 11

*Budinich v. Becton Dickinson & Co.*,
    486 U.S. 196 (1988)......................................................................................... 10

*Carter v. Beverly Hills Sav. & Loan Ass'n*,
    884 F.2d 1186 (9th Cir. 1989)........................................................................ 8

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
    259 F.3d 1186 (9th Cir. 2001).............................................................. 2, 6, 12

*Condon v. Condon*,
    2008 WL 11338132 (C.D. Cal. 2008)........................................................... 9

*E.E.O.C. v. U.S. Bakery*,
    2003 WL 23538023 (D. Or. Nov. 20, 2003)................................................ 9

*Feldman v. Olin Corp.*,
    673 F.3d 515 (7th Cir. 2012)..................................................................... 7, 8

*Kowalski v. Mommy Gina Tuna Res.*,
    2009 WL 1322367 (D. Haw. May 8, 2009).............................................. 13

*Kreidler v. Pixler*,
    2011 WL 13193276 (W.D. Wash. May 13, 2011)...................................... 13

*S.L. ex rel. Loof v. Upland Unified Sch. Dist.*,
    747 F.3d 1155 (9th Cir. 2014)..................................................... 1, 7, 9, 11

*Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*,
    2018 WL 4682012 (S.D.N.Y. 2018)........................................................... 7

*Max Sound Corp. v. Google LLC*,
    2018 WL 1697107 (N.D. Cal. Apr. 6, 2018) ............................................. 13

*Padgett v. Loventhal*,
    2015 WL 6449389 (N.D. Cal. 2015) ........................................................... 8

MOTION TO CERTIFY JUDGMENT OR CORRECT CLERK'S NOTICE

*Perez v. AC Roosevelt Food Corp.*,
    744 F.3d 39 (2d Cir. 2013).................................................................... 1, 8, 11

*Radio Television Espanola S.A. v. New World Entm't, Ltd.*,
    183 F.3d 922 (9th Cir. 1999)..................................................................... 8, 9

*Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating
    Engineers & Participating Employers*,
    571 U.S. 177 (2014) .......................................................................... 10

*Sibia Neurosciences, Inc. v. Cadus Pharm. Corp*,
    1999 WL 33554683 (S.D. Cal. Mar. 10, 1999) ........................................ 12

*Skydive Arizona, Inc. v. Quattrocchi*,
    2010 WL 2534200 (D. Ariz. June 18, 2010) .............................................. 13

*UMG Recordings, Inc. v. BCD Music Grp., Inc.*,
    2012 WL 12882702 (C.D. Cal. Oct. 3, 2012)...................................... 12, 13

*Whitaker v. Garcetti*,
    486 F.3d 572 (9th Cir. 2007)................................................................. 10

*Yue v. Storage Tech. Corp.*,
    2008 WL 4665846 (N.D. Cal. Oct. 21, 2008)............................................. 8

**Statutes**

28 U.S.C. § 1963............................................................2, 3, 6, 12, 14

**Other Authorities**

Fed. R. App. P. 4(a)(1)(A)..................................................................... 1, 11

Fed. R. App. P. 4(a)(7)(A)(i) .................................................................... 11

Fed. R. App. P. 4(a)(7)(A)(ii) ................................................................... 11

Fed. R. Civ. Proc. 58 .................................................................. 1, 6, 9, 10

Fed. R. Civ. Proc. 58(a)(3) ........................................................................ 7

Fed. R. Civ. Proc. 58(c)(2)(B) ................................................................. 10

Fed. R. Civ. Proc. 60(a) ........................................................................ 2, 6

Local Rule 7-3 ....................................................................................... 6

Local Rule 58-6 .........................................................................8, 9, 10, 11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

By this Motion, Defendant Donald J. Trump ("Mr. Trump") requests that the Court issue an Order certifying the December 11, 2018 Order in this action [ECF No. 46] awarding Mr. Trump a total of $293,052.33 in attorneys' fees and sanctions against Plaintiff Stephanie Clifford ("Ms. Clifford") (the "Attorneys' Fees Order") for registration in the Southern District of Ohio, where that court is holding $450,000 in settlement funds to be paid to Ms. Clifford.  The Clerk of this Court previously certified the Attorneys' Fees Order for registration, but recently issued a Notice stating its prior certification was made in error (the "Clerk's Notice"), thereby necessitating the instant Motion.

As set forth herein, the Clerk's initial certification of the Attorneys' Fees Order was appropriate and should not have been disturbed.  Nonetheless, this Court's independent certification of the Attorneys' Fees Order is proper.

***First,*** the Attorneys' Fees Order is a final judgment under well-settled law. Federal Rule of Civil Procedure 58, as amended in 2002, unambiguously provides that an order on a motion for attorneys' fees is itself a judgment and does not need to be reduced into a separate document.  Following this amendment, courts have universally held that an attorneys' fees order, like the one herein, is itself a judgment. *See e.g., S.L. ex rel. Loof v. Upland Unified Sch. Dist.*, 747 F.3d 1155, 1161 (9th Cir. 2014); *Perez v. AC Roosevelt Food Corp.*, 744 F.3d 39, 41-42 (2d Cir. 2013). Further, the judgment is final because Ms. Clifford never sought to appeal the Attorneys' Fees Order, and the time for her to appeal the Order has long since expired.  *See* Fed. R. App. P. 4(a)(1)(A) ("In a civil case… the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.").  These reasons alone are sufficient grounds for the Court to grant this Motion and certify the Attorneys' Fees Order or, in the alternative, correct and/or strike the Clerk's Notice because its prior certification of

the Attorneys' fees order was proper.

**Second,** even if the Attorneys' Fees Order were considered to be part of Ms. Clifford's pending appeal of the Order granting Mr. Trump's Anti-SLAPP Motion (which it should not since they are independent and separately appealable Orders), there remains good cause to certify the Attorneys' Fees Order under 28 U.S.C. § 1963. Ms. Clifford has not obtained a supersedeas bond in connection with her appeal of the Anti-SLAPP Motion, and good cause merely requires "an absence of assets in the judgment forum, coupled with the presence of substantial assets in the registration forum," both of which are present here. *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.,* 259 F.3d 1186, 1197-98 (9th Cir. 2001). To Mr. Trump's knowledge, Ms. Clifford does not possess any assets in this jurisdiction. Ms. Clifford is a resident of Texas and owns no real property in California. In contrast, she possesses substantial assets in the Southern District of Ohio in the form of the $450,000 in settlement funds being held by that court.

Accordingly, Mr. Trump respectfully requests that the Court certify the Attorneys' Fees Order for registration in the Southern District of Ohio pursuant to 28 U.S.C. § 1963, or in the alternative correct and/or strike the Clerk's April 10, 2020 Notice pursuant to Federal Rule of Civil Procedure 60(a).

## II.   STATEMENT OF FACTS

### A.   The Court Dismisses This Action and Grants Mr. Trump Attorneys' Fees and Sanctions

On April 30, 2018, Ms. Clifford filed this case against Mr. Trump in the United States District Court, Southern District of New York, asserting a single claim for defamation. [*See* SDNY Case No. 18-CV-03842, ECF No. 1.] On August 13, 2018, this case was transferred to the United States District Court, Central District of California, the Honorable S. James Otero presiding. [ECF No. 20.]

On August 27, 2018, Mr. Trump filed a Motion to Dismiss/Strike Plaintiff's defamation claim pursuant to Texas Anti-SLAPP law (the "Anti-SLAPP Motion").

[ECF No. 28.]  After the Anti-SLAPP Motion was fully briefed and oral argument was heard, Judge Otero granted the Anti-SLAPP Motion on October 15, 2018 (the "Anti-SLAPP Order").  [ECF No. 36.]  On the same date, October 15, 2018, Ms. Clifford filed a Notice of Appeal of the Anti-SLAPP Order.  [ECF No. 37.]

On October 29, 2018, Mr. Trump filed a Motion for Attorneys' Fees and Monetary Sanctions ("Motion for Attorneys' Fees").  [ECF No. 39.]  After the Motion for Attorneys' Fees was fully briefed and oral argument was heard, on December 11, 2018 Judge Otero granted Mr. Trump's Motion for Attorneys' Fees and issued the Attorneys' Fees Order awarding Mr. Trump a total of **$293,052.33** in attorneys' fees and sanctions.  [ECF No. 46.]  Thereafter, Ms. Clifford did not file a notice of appeal of the Attorneys' Fees Order or obtain a supersedeas bond in connection with either the Attorneys' Fees Order or the Anti-SLAPP Order.  [Harder Dec., ¶ 2.]

**B.** **Mr. Trump Registers the Attorneys' Fees Order in the Southern District of Ohio After Ms. Clifford Settles Her Case Against the City of Columbus, Ohio**

On January 14, 2019, Ms. Clifford filed a Complaint in the United States District Court, Southern District of Ohio against various police officers in the Columbus, Ohio Division of Police alleging false arrest, malicious prosecution, civil conspiracy and abuse of process, arising out of her arrest at an adult entertainment venue in Columbus, Ohio on July 11, 2018 (*Clifford v. Keckley, et al.*, Southern District of Ohio Case No. 19-cv-00119) (the "Ohio Action").  [Complaint in Ohio Action, Ex. A to Declaration of Charles J. Harder ("Harder Dec.").]

Following reports in the media that Ms. Clifford had reached a settlement with the defendants in the Ohio Action in the amount $450,000, on September 30, 2019, Mr. Trump obtained the Central District of California Clerk's Certification of the Attorneys' Fees Order for registration in another district pursuant to 28 U.S.C § 1963.  [Certified Attorneys' Fees Order, Ex. B to Harder Dec.]  On October 8, 2019, Mr. Trump registered this certified copy of the Attorneys' Fees Order as a Foreign

Judgment with the United States District Court, Southern District of Ohio [ECF No. 43 in Ohio Action; ECF No. 1 in *Clifford v. Trump,* Southern District of Ohio Case No. 19-mc-00047.]

On November 13, 2019, in the Ohio Action, Ms. Clifford filed a Motion to Vacate Mr. Trump's registration of the Attorneys' Fees Order as a registered judgment on the grounds that the Order purportedly did not constitute a final judgment. [ECF No. 47 in Ohio Action.]

Following a status conference between all parties, including the interested parties of Mr. Trump and Ms. Clifford's prior attorney, Michael Avenatti, the Southern District of Ohio court entered an Order on November 18, 2019 ordering the settlement proceeds to be deposited with the Clerk. [ECF No. 50 in Ohio Action.] The court further ordered the parties to brief the narrow issue of whether Ms. Clifford's current attorneys "should be able to collect their attorney's fees before the Court adjudicates the interests of any other parties," and stayed briefing on Ms. Clifford's Motion to Vacate, among other issues, until resolution of the aforementioned issue. [*Id.*]

On December 3, 2019, the defendants in the Ohio Action deposited the settlement funds in the amount of $450,000 with the Clerk. [ECF No. 53 in Ohio Action.] Thereafter, the parties submitted their briefs with respect to the narrow issue of Ms. Clifford's Ohio attorneys' ability to collect their fees from the settlement funds ahead of the other interested parties [ECF Nos. 54-56 in Ohio Action.] Mr. Trump's brief on this issue included a detailed analysis explaining how, under well-settled law, the Attorneys' Fees Order constituted a valid and enforceable final judgment. [ECF No. 55 in Ohio Action.] As of the date of this instant Motion, the Southern District of Ohio Court has not ruled on the issue of fee priority with respect to Ms. Clifford's attorneys or any other matters with respect to the settlement funds, has not held any further status conferences with respect to the funds, and the $450,000 continues to be held by the clerk of that court. [*See* docket in Ohio Action.]

**C.**    **Ms. Clifford Challenges Mr. Trump's Registration of the Judgment Through Filings in the Central District of California**

On December 11, 2019, Ms. Clifford filed a Motion in this Court which, among other things, sought to vacate the Central District of California Clerk's certification of the Attorneys' Fees Order on grounds that it purportedly did not constitute a final judgment and mirrored her arguments in her filings in the Ohio Action. [ECF No. 55.] This Motion was stricken by Judge Otero for failure of Ms. Clifford's new counsel to comply with the necessary substitution of counsel procedures. [ECF No. 58.]

On March 19, 2020, Ms. Clifford re-filed her Motion to Vacate the Clerk's certification of the Attorneys' Fees Order. [ECF No. 64.]

On April 8, 2020, this action was transferred from Judge Otero to this Court. [ECF No. 65.]

On April 10, 2020, the Central District of California Clerk issued a Notice of Clerical Error, which stated that the Clerk's September 30, 2019 certification of the Attorneys' Fees Order was "issued in error" on the grounds that it "cannot be certified as a judgment" because it was a "Minute Order." [ECF No. 66.]

On April 15, 2020, this Court issued an Order denying as moot Ms. Clifford's Motion to Vacate in light of the Clerk's Notice. [ECF No. 67.]

Following issuance of the Clerk's April 10, 2020 Notice, Ms. Clifford filed the same Notice in the Ohio Action and requested that court to immediately release the settlement funds. [ECF Nos. 57, 59 in Ohio Action.] In response, counsel for Mr. Trump informed the Ohio court that he intended to file the instant Motion and requested that the court stay the release of the settlement funds pending the determination of this Motion [ECF No. 58, 60 in Ohio Action.] As of the date of this Motion, the Ohio court has not taken any action with respect to these funds. [*See* docket in Ohio Action.]

/ / /

On April 24, 2020, counsel for Mr. Trump and Ms. Clifford met and conferred telephonically pursuant to Local Rule 7-3, but were unable to reach a resolution, and Ms. Clifford has advised that she will oppose this Motion.  [Harder Dec., ¶ 6.]

### III.  **ARGUMENT**

### A.  **Legal Standard**

Title 28 U.S.C. § 1963 sets forth the requirements for certifying a judgment and registering it in a foreign district.  A judgment may be certified "when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown."  28 U.S.C. § 1963.  "A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner."  *Id*.  As detailed herein, these requirements have been satisfied because the Attorneys' Fees Order is a judgment that has become final due to expiration for the time for appeal, and there also is independent good cause to certify the judgment pursuant to the factors set forth by the Ninth Circuit in *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186 (9th Cir. 2001).

Federal Rule of Civil Procedure 60(a) also gives the Court authority to correct clerical errors by providing, in pertinent part: "The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.  The court may do so on motion or on its own, with or without notice."  Thus, the Court could also elect to simply correct and/or strike the Clerk's Notice, which would confirm the validity of the prior certification of the Attorneys' Fees Order.

### B.  **The Attorneys' Fees Order is a Valid Judgment**

### 1.  **The Attorneys' Fees Order is a Judgment Under FRCP 58**

The Clerk's April 10, 2020 Notice, which stated that the Attorneys' Fees Order cannot be certified as a judgment because it is a "Minute Order," directly contradicts Federal Rule of Civil Procedure 58.  Rule 58, as amended in 2002, sets forth the

procedures for entry of judgment and provides that a judgment for attorneys' fees need not be set out in a separate document. Fed. R. Civ. Proc. 58(a)(3). "[S]ince 2002, Rule 58(a)(3) has provided that no separate document is required 'for an order disposing of a motion for attorney's fees under Rule 54.'" *Feldman v. Olin Corp.*, 673 F.3d 515, 516 (7th Cir. 2012). The *Feldman* Court further explained that the "no separate document" rule is not limited to attorneys' fees specifically awarded pursuant to Federal Rule of Civil Procedure 54:

> Rule 54 does not create a right to seek attorneys' fees. The right must come from somewhere else… All that the reference in Rule 58(a)(3) to "an order disposing of a motion for attorney's fees *under* Rule 54" can sensibly be understood to mean is that Rule 54, the rule on judgments, makes awards of attorneys' fees one type of judgment and Rule 58 designates it as a type of judgment for which a separate judgment document is not required. **Rule 58 should not be read to mean that some motions for awards of attorneys' fees are "under" Rule 54 and others are "under" something else and therefore require a separate judgment document to start the 30–day appeal time running.**

*Id.* at 517 (emphasis added).

"[A]s a general matter, parties may not move for entry of a separate judgment document on an award for attorney's fees pursuant to Rule 58(d) because that Rule only allows parties to move for the entry of a separate judgment document 'as required by Rule 58(a)' and because 58(a) exempts awards of attorney's fees from the separate judgment document requirement." *Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*, 2018 WL 4682012, at *2 (S.D.N.Y. 2018).

Accordingly, courts routinely hold that an order on a motion for attorneys' fees, like the Attorneys' Fees Order, is a final judgment. *See S.L. ex rel. Loof v. Upland Unified Sch. Dist.,* 747 F.3d 1155, 1161-1162 (9th Cir. 2014) (holding that the lower court's order granting plaintiff's motion for attorneys' fees, rather than a subsequently

1  filed formal separate document, was the judgment from which time to appeal began to

2  run); *Perez v. AC Roosevelt Food Corp.*, 744 F.3d 39, 41-42 (2d Cir. 2013) (same);

3  *Feldman v. Olin Corp.*, 673 F.3d 515, 516-517 (7th Cir. 2012) (same); *Yue v. Storage*

4  *Tech. Corp.*, 2008 WL 4665846, at *1 (N.D. Cal. Oct. 21, 2008) (declining to enter

5  separate formal judgment because the order adopting the Magistrate's Report and

6  Recommendation granting defendants' motion for attorneys' fees *was the judgment*

7  from which they could collect their fees); *see also Padgett v. Loventhal*, 2015 WL

8  6449389, at *1 (N.D. Cal. 2015) ("When disposing of a motion for attorney's fees

9  under Federal Rule of Civil Procedure 54, a separate document setting out judgment

10  is not required. Fed. R. Civ. P. 58(a). Therefore, the district court's order ruling on the

11  issue of attorney's fees triggers the 30-day period for filing a notice of appeal.").

12  ## 2.  Ms. Clifford's Position is Contrary to Settled Law and Not
13  ## Supported By Any of Her Cited Authorities

14  Ms. Clifford has cited no valid authority contrary to the foregoing settled law in

15  any of her briefs on the issue in this Court, or the Ohio court.  *Radio Television*

16  *Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922 (9th Cir. 1999), which Ms.

17  Clifford has repeatedly cited in support of her assertion that the Attorneys' Fees Order

18  is not a valid judgment, involved an order on a motion for summary judgment, not an

19  order awarding attorneys' fees.  *Id.* at 926.  Moreover, that ruling was based on the

20  prior version of Rule 58, which required that **all** judgments be set forth on a separate

21  document, before it was amended in 2002 to add the "no separate document" rule,

22  which included orders on motions for attorneys' fees.  *Id.* at 930.  *Carter v. Beverly*

23  *Hills Sav. & Loan Ass'n*, 884 F.2d 1186 (9th Cir. 1989), which Ms. Clifford also has

24  previously cited, involved a civil minute entry regarding the dismissal of a case prior

25  to the 2002 amendment to Rule 58, and thus is also inapplicable.  *Id.* at 1189.

26  Ms. Clifford's repeated attempts to support her position based on Central

27  District of California Local Rule 58-6 is equally unavailing.  Local Rule 58-6

28  provides: "Notation in the civil docket of entry of a memorandum of decision, an

1  opinion of the Court, or a minute order of the Clerk shall not constitute entry of

2  judgment pursuant to F.R.Civ.P. 58 and 79(a) unless specifically ordered by the

3  judge."  To begin, the Attorneys' Fees Order was not a notation in the civil docket

4  entry.  Rather, it was a detailed written order by Judge Otero.  The fact that the

5  Attorneys' Fees Order is titled "Civil Minutes – General" is of no assistance to Ms.

6  Clifford.

7  Moreover, the Ninth Circuit in *Radio Television Espanola S.A. v. New World*

8  *Entm't, Ltd.* held that the procedure set forth in this Local Rule **is not applicable** to

9  actual written judgments in compliance with Rule 58.  183 F.3d at 931, n.9.  Thus,

10  Judge Otero's Attorneys' Fees Order is in compliance with Local Rule 58-6 since the

11  Order itself is the judgment under Rule 58.  Consistent with the Ninth Circuit's

12  decision in *Radio Television*, courts in the Central District of California have held

13  that, following the 2002 amendment to Rule 58 containing the "no separate

14  document" rule, orders on motions for attorneys' fees are valid, enforceable

15  judgments without running afoul of Local Rule 58-6.  *See e.g., S.L. ex rel. Loof v.*

16  *Upland Unified Sch. Dist.*, 747 F.3d 1155, 1161 (9th Cir. 2014) (holding Central

17  District's order on motion for attorneys' fees was judgment entered as of the date it

18  was entered on the docket); *Condon v. Condon*, 2008 WL 11338132, at *1, n.1, *7

19  (C.D. Cal. 2008) (issuing **minute order** granting motion for attorneys' fees but

20  declining moving party's request that the award be set out in a separate judgment

21  because Rule 58 provides that a separate document is not required).

22  Ms. Clifford's interpretation of the Local Rule 58-6 disregards the foregoing

23  legal authorities, directly conflicts with the explicit "no separate document"

24  provisions set out by Rule 58, and ignores the principle that local rules cannot conflict

25  with federal statutes and rules.  *See* Fed. R. Civ. Proc. 83(a); *E.E.O.C. v. U.S. Bakery*,

26  2003 WL 23538023, at *2 (D. Or. Nov. 20, 2003), citing *Mutual Fund Investors, Inc.*

27  *v. Putnam Mgmt.* 553 F.2d 620, 625 (9th Cir.1977) ("A court's local rule is invalid if

28  it conflicts with the Federal Rules of Civil Procedure.").

MOTION TO CERTIFY JUDGMENT OR CORRECT CLERK'S NOTICE

**3.**      **The Attorneys' Fees Order is Still a Judgment Even if Ms.**

         **Clifford's Incorrect Interpretation of the Law is Accepted**

Even if Ms. Clifford's incorrect reading of Local Rule 58-6 were adopted by this Court and judgment was not entered at the time Judge Otero entered the Attorneys' Fees Order because a separate document was required, Rule 58 provides that where a separate document is required but not entered, judgment is still entered **150 days** following the pertinent entry on the civil docket. Fed. R. Civ. Proc. 58(c)(2)(B). Thus, even if Ms. Clifford's assertion that Local Rule 58-6 prevented entry of judgment on the date the Attorneys' Fees Order was entered on the docket (December 11, 2018) were adopted (which it should not), judgment still would have been entered 150 days later— **May 10, 2019**.

As such, the Attorneys' Fees Order is a valid judgment despite being titled "Civil Minutes – General."

**C.**      **The Attorneys' Fees Order is Final Because the Time to Appeal Has**

         **Expired**

The Attorneys' Fees Order is an independent and separately appealable judgment, and "raises legal issues collateral to and separate from the decision on the merits." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988) (internal quotations omitted) (holding that deadlines to appeal order on merits and order on attorneys' fees are independent and based on date each order is entered); *see also Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Employers*, 571 U.S. 177, 190 (2014) (same). Moreover, in *Whitaker v. Garcetti*, 486 F.3d 572, 586 (9th Cir. 2007), the Ninth Circuit, faced with a similar situation as here, held that there was appellate jurisdiction to review the lower court order on the underlying merits, but no appellate jurisdiction to review the lower court's subsequent order on a motion for attorneys' fees because no separate notice of appeal was filed for the fee order.

/ / /

"In a civil case…the notice of appeal…must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A). This time limit is "mandatory and jurisdictional." *Browder v. Dir., Dep't of Corr. of Illinois*, 434 U.S. 257, 264 (1978). "A judgment or order is entered for purposes this Rule if Federal Rule of Civil Procedure 58(a) does not require a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a)." Fed. R. App. P. 4(a)(7)(A)(i).

Here, the Attorneys' Fees Order was entered on the docket on December 11, 2018, and if Ms. Clifford wished to appeal the Order, she was required to file a notice of appeal no later than January 10, 2019.[1] It is undisputed that Ms. Clifford did not file a notice of appeal of the Attorneys' Fees Order or obtain a bond by that date or any time thereafter, and thus the time for her to appeal the Order has expired, rendering the Order final. *See, Perez v. AC Roosevelt Food Corp.,* 744 F.3d 39, 41-42 (2d Cir. 2013) (dismissing appeal of order granting plaintiff's motion for attorneys' fees as untimely because notice of appeal was not filed within 30 days of the date the order granting motion was entered on the docket); *S.L. ex rel. Loof v. Upland Unified Sch. Dist.*, 747 F.3d 1155, 1161-1162 (9th Cir. 2014) (same).

Accordingly, the Court may certify the Attorneys' Fees Order for registration in the Southern District of Ohio, or correct and/or strike the Clerk's April 10, 2020 Notice, because the Order is a judgment, and the time to appeal it has long since expired.[2]

---

[1] Even if Ms. Clifford's incorrect interpretation of Local Rule 58-6 were adopted, she would have been required to file a notice of appeal no later than June 9, 2019 (150 days after the December 11, 2018 entry of the Attorneys' Fees Order plus 30 days), which she did not do. Fed. R. App. P. 4(a)(7)(A)(ii).

[2] Mr. Trump's prior Notice of Lodging a formal separate judgment on the Attorneys' Fees Order [ECF No. 47], which Ms. Clifford has erroneously described as a "motion" in numerous filings, has no impact on the above analysis or change the fact that the Attorneys' Fees Order is a valid final judgment. *See S.L. ex rel. Loof.*,

**D.   In the Alternative, There is Good Cause to Certify the Attorneys' Fees Order Pursuant to 28 U.S.C. § 1963**

Even if the Attorneys' Fees Order were considered to be part of Ms. Clifford's pending appeal of the Anti-SLAPP Order (which it should not since they are independent and separately appealable Orders), certification of the Attorneys' Fees Order for registration in the Southern District of Ohio is still proper under 28 U.S.C. § 1963.  Again, Ms. Clifford has not obtained a supersedeas bond in connection with her appeal of the Anti-SLAPP Order, or in connection with the Attorneys' Fees Order. [Harder Decl., ¶ 2.]

"Section 1963…permits a district court to issue an order certifying a judgment for registration during the pendency of an appeal upon a finding of "good cause." *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1197 (9th Cir. 2001).  "The 'good cause' language was added to section 1963 in 1988 'to deal with the anomaly that a judgment for which no supersedeas bond had been posted was enforceable during appeal only in the rendering district.'" *Sibia Neurosciences, Inc. v. Cadus Pharm. Corp*, 1999 WL 33554683, at *6 (S.D. Cal. Mar. 10, 1999), citing *Pacific Reinsurance Management Corp. v. Fabe*, 929 F.2d 1215, 1218 (7th Cir.1991).

Good cause is typically found "where there is an absence of assets in the judgment forum, coupled with the presence of substantial assets in the registration forum." *Columbia Pictures Television, Inc.*, 259 F.3d at 1197-98; *see also UMG Recordings, Inc. v. BCD Music Grp., Inc.,* 2012 WL 12882702, at *3 (C.D. Cal. Oct. 3, 2012).  To satisfy these factors, "Plaintiff is not required to produce 'the details of Defendants' finances or evidence that would have been admissible at trial'… Rather,

---

*supra,* 747 F.3d at 1161 ("[I]f, after filing a final disposition, a court files a more formal judgment, the latter does not constitute a second final disposition or extend the appeal period.").

1  plaintiff's burden is **'minimal.'**" *Kreidler v. Pixler*, 2011 WL 13193276, at *1 (W.D.

2  Wash. May 13, 2011), *Kowalski v. Mommy Gina Tuna Res.*, 2009 WL 1322367, at *1

3  (D. Haw. May 8, 2009), as amended (May 20, 2009) (emphasis added).

4      These factors are easily satisfied in this case. First, Ms. Clifford lacks assets in

5  this jurisdiction. As reflected in the attached asset search for Ms. Clifford, she does

6  not currently reside in California or possess any real property in the state and has not

7  maintained a residence in California since at least 2007, all of which is consistent with

8  her allegations in her Complaint in this action and in the Ohio Action that she is a

9  resident of Texas. [*See* Public Records Search, Ex. C to Harder Dec.; Complaint, ¶ 1;

10  Complaint in Ohio Action, ¶ 9, Ex. A to Harder Dec.] As such, Ms. Clifford lacks

11  sufficient assets in California, much less the Central District of California, to satisfy

12  the Attorneys' Fees Order. *See Max Sound Corp. v. Google LLC,* 2018 WL 1697107,

13  at *2 (N.D. Cal. Apr. 6, 2018) (holding first good cause factor satisfied by defendant's

14  undisputed representation that plaintiff lacked "few, if any, assets" in rendering

15  district); *Best W. Int'l, Inc. v. AV Inn Assocs. 1, LLC,* 2011 WL 13160912, at *2 (D.

16  Ariz. Feb. 22, 2011) (holding first good cause factor satisfied where "no evidence in

17  record [to] suggest[]" defendants had assets in rendering district); *Skydive Arizona,*

18  *Inc. v. Quattrocchi,* 2010 WL 2534200, at *5 (D. Ariz. June 18, 2010) (granting

19  motion to certify judgment on grounds that defendants "primarily" had assets in state

20  other than rendering district).

21      Second, it is undisputed that Ms. Clifford possesses substantial assets in the

22  Southern District of Ohio: the $450,000 in settlement funds that are currently being

23  held by that Court. *UMG Recordings, Inc. v. BCD Music Grp., Inc.*, 2012 WL

24  12882702, at *4 (C.D. Cal. Oct. 3, 2012) (holding evidence of one defendant

25  receiving income of more than $150,000 and second defendant receiving income of

26  more than $48,000 in Southern District of New York satisfies substantial asset factor

27  for certification in that district).

28  / / /

-13-
MOTION TO CERTIFY JUDGMENT OR CORRECT CLERK'S NOTICE

Accordingly, because Ms. Clifford lacks assets in this district and possesses substantial assets in the Southern District of Ohio, there is good cause to certify the Attorneys' Fees Order for registration there.

**IV.**   <u>**CONCLUSION**</u>

For the foregoing reasons, Mr. Trump respectfully requests that the Court certify the Attorneys' Fees Order for registration in the Southern District of Ohio pursuant to 28 U.S.C. § 1963 or, in the alternative, correct and/or strike the Clerk's April 10, 2020 Notice in this action.

Dated: May 4, 2020                     HARDER LLP

                                       By:  _/s/ Charles J. Harder_
                                           CHARLES J. HARDER
                                           Attorneys for Defendant
                                           DONALD J. TRUMP

MOTION TO CERTIFY JUDGMENT OR CORRECT CLERK'S NOTICE

1  HARDER LLP
2  CHARLES J. HARDER (CA Bar No. 184593)
   RYAN J. STONEROCK (CA Bar No. 247132)
3  132 S. Rodeo Drive, Fourth Floor
4  Beverly Hills, California 90212
   Telephone:   (310) 546-7400
5  Facsimile:    (310) 546-7401
6  Email:        CHarder@HarderLLP.com
                 RStonerock@HarderLLP.com
7
   Attorneys for Defendant
8  DONALD J. TRUMP

9           **UNITED STATES DISTRICT COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**
10

11  STEPHANIE CLIFFORD a.k.a.        Case No. 2:18-cv-06893-JLS-FFM
    STORMY DANIELS,
12                                   **DECLARATION OF**
13                Plaintiff,         **CHARLES J. HARDER IN**
                                     **SUPPORT OF MOTION OF**
14       v.                          **DONALD J. TRUMP TO CERTIFY**
                                     **JUDGMENT FOR REGISTRATION**
15                                   **IN SOUTHERN DISTRICT OF**
    DONALD J. TRUMP,                 **OHIO OR, IN THE ALTERNATIVE,**
16                                   **TO CORRECT AND/OR STRIKE**
17                Defendant.         **CLERK'S APRIL 10, 2020 NOTICE**

18                                   [Notice of Motion and Motion, and
19                                   Proposed Order Filed Concurrently
                                     Herewith]
20

21                                   Assigned for All Purposes to the
22                                   Hon. Josephine L. Staton

23                                   **Date:      July 17, 2020**
24                                   **Time:      10:30 a.m.**
                                     **Location:  411 West 4th Street**
25                                   **            Courtroom 10A, 10th Floor**
26                                   **            Santa Ana, CA 92701**

27                                   Action Filed:  April 30, 2018
28

                              1

# <u>DECLARATION OF CHARLES J. HARDER</u>

I, Charles J. Harder, declare:

1.      I am an attorney duly licensed to practice before all courts of the State of California and in the U.S. District Court for the Central District of California, among other courts.  I am a partner of the law firm Harder LLP, counsel of record for Defendant Donald J. Trump ("Mr. Trump").  I make this declaration based on my own personal knowledge and, if called and sworn as a witness, I could and would competently testify hereto.

2.      On December 11, 2018, the Honorable S. James Otero issued an Order in this case granting Mr. Trump's Motion for Attorneys' Fees and Sanctions, awarding Mr. Trump a total of $293,052.33 in attorneys' fees and sanctions against Plaintiff Stephanie Clifford ("Ms. Clifford") (the "Attorneys' Fees Order").  As of the date of this declaration, Ms. Clifford has not filed a Notice of Appeal of the Attorneys' Fees Order or obtained a supersedes bond in connection with her appeal of the Order granting Mr. Trump's Anti-SLAPP Motion.

3.      Attached hereto as **Exhibit A** is a true and correct copy of the Complaint filed by Ms. Clifford on January 14, 2019 in the matter of *Clifford v. Keckley*, *et al.*, United States District Court, Southern District of Ohio, Case No. 19-cv-00119, which is available on the Pacer website for the Southern District of Ohio (https://ecf.ohsd.uscourts.gov/).

4.      Attached hereto as **Exhibit B** is a true and correct copy of the Attorneys' Fees Order, as certified by the Clerk of the United States District Court, Central District of California, on September 30, 2019.

5.      Attached hereto as **Exhibit C** is a true and correct copy of a Westlaw public record search of Ms. Clifford conducted by my office, which reflects that Ms. Clifford currently resides in Texas and does not possess any real property in the State of California.  Ms. Clifford's personal information has been redacted from this exhibit.

6.     On April 24, 2020, my colleagues, Ryan J. Stonerock and Steven H. Frackman met and conferred telephonically with counsel for Ms. Clifford, Clark Brewster, Mbilike Mwafulirwa and Guy Fortney, in connection with the instant Motion to Certify the Attorneys' Fees Order pursuant to Local Rule 7-3. The parties discussed their respective positions, but were unable to resolve their dispute. Counsel for Ms. Clifford has advised that they will oppose this Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 4, 2020, at Los Angeles, California.


_____
CHARLES J. HARDER

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE CLIFFORD a.k.a. | : | CIVIL ACTION NO. |
| STORMY DANIELS, an individual, | : | |
| c/o Avenatti Associates, APC | | |
| 1910 W Sunset Blvd, #450 | | |
| Los Angeles, CA 90026, | : | JUDGE: |
| | : | |
| Plaintiff, | : | MAGISTRATE JUDGE: |
| | : | |
| v. | : | |
| | : | |
| SHANA M. KECKLEY, in her | : | |
| individual capacity as a | : | |
| Columbus Police Vice Unit Detective, | : | |
| City of Columbus, Division of Police | : | **COMPLAINT** |
| 120 Marconi Blvd. | : | |
| Columbus, OH 43215, | : | **DEMAND FOR JURY TRIAL** |
| | : | |
| and | : | |
| | : | |
| WHITNEY R. LANCASTER, in his | : | |
| individual capacity as a | : | |
| Columbus Police Vice Unit Lieutenant, | : | |
| City of Columbus, Division of Police | : | |
| 120 Marconi Blvd. | : | |
| Columbus, OH 43215, | : | |
| | : | |
| and | : | |
| | : | |
| MARY S. PRAITHER, in her | : | |
| individual capacity as a | : | |
| Columbus Police Vice Unit Detective, | : | |
| City of Columbus, Division of Police | : | |
| 120 Marconi Blvd. | : | |
| Columbus, OH 43215, | : | |
| | : | |
| and | : | |
| | : | |
| STEVEN G. ROSSER, in his | : | |
| individual capacity as a | : | |

Case 2:19-cv-00663-WHR-EPD Doc #: 1 Filed: 05/03/19 Page: 25 of 53 PAGEID #: 2620
Case 2:18-cv-00635-GLF-FPW Document 05-20 Filed 05/04/19 Page 3 of 31 PageID
#:1541

Columbus Police Vice Unit Detective,     :
City of Columbus, Division of Police     :
120 Marconi Blvd.     :
Columbus, OH 43215,     :
     :
    and     :
     :
JOHN OR MARY DOE 1, in his or her     :
individual capacity,     :
City of Columbus, Division of Police     :
120 Marconi Blvd.     :
Columbus, OH 43215,     :
     :
    and     :
     :
JOHN OR MARY DOE 2, in his or her     :
individual capacity,     :
City of Columbus, Division of Police     :
120 Marconi Blvd.     :
Columbus, OH 43215,     :
     :
          Defendants.     :

## I.    INTRODUCTION

1.    The claims at issue in this case arise from a politically motivated July 11, 2018 incident in which Officers of the Columbus Division of Police ("CDP") Vice Unit ("Vice Unit"), acting under color of state law, intentionally and willfully subjected Plaintiff Stephanie Clifford ("Ms. Clifford") to, *inter alia*, false arrest and false imprisonment in violation of her civil rights.

2.    Approximately two months before the events at issue in this case, Ms. Clifford, a.k.a. Stormy Daniels ("Ms. Clifford"), became an opponent of President Donald Trump in litigation. Namely, in March 2018, Ms. Clifford filed a lawsuit seeking to be released from a non-disclosure agreement she had signed in connection with a $130,000 payment she received from the President and/or his representatives. On March 25, 2018, Ms. Clifford was interviewed on "60 Minutes" and told a national television audience about her extramarital affair with the President which led to the non-disclosure agreement and payment of "hush money." In response,

the President and his surrogates attacked her, sought to disparage Ms. Clifford and to impugn her character and credibility.

3. In this civil rights action, Ms. Clifford seeks relief for the violation of her rights secured by the Civil Rights Act of 1871, 42 USC §1983, the Fourth and Fourteenth Amendments to the United States Constitution, and the common law of the State of Ohio.

4. Plaintiff Ms. Clifford seeks monetary damages (special, compensatory, and punitive) against defendants, as well as declaratory, injunctive, and equitable relief, an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## II. JURISDICTION AND VENUE

5. Jurisdiction over claims brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983 (deprivation of rights under color of law), is conferred on this Court by 28 U.S.C. §§ 1331 (federal question); 1343 (civil rights), and jurisdiction over the state claims is conferred by 28 U.S.C. § 1367 (supplemental jurisdiction).

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) and S.D. Ohio Civ. R. 82.1(b), because the events that give rise to this action occurred in Franklin County, Ohio. Defendants reside and/or are employed as CDP Vice Unit members or in other CDP employment there.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b) and S.D. Ohio Civ. R. 82.1(b), because the events that give rise to this action occurred in Franklin County, Ohio. Defendants reside and/or are employed as CDP Vice Unit members or in other CDP employment there.

8. Costs and attorneys' fees may be awarded pursuant to 42 U.S.C. § 1988, the common law of the State of Ohio, and Fed. R. Civ. P. 54.

## III. PARTIES

9. Plaintiff Ms. Clifford ("Ms. Clifford") is a resident of Texas.

10. Defendants Shana Keckley ("Defendant Keckley"), Whitney Lancaster ("Defendant Lancaster"), Mary Praither ("Defendant Praither"), Steven Rosser ("Defendant

Rosser"), and John or Mary Doe 1 ("Defendant Doe 1") (Defendants Keckley, Lancaster, Praither, Rosser and Doe 1 shall collectively be referred to herein as "Defendant Officers") are being sued in their individual capacity; and were, at all times material to this Complaint, employees of the CDP Vice Unit ("Vice Unit") located in Franklin County, Ohio, and "persons" under 42 U.S.C §1983 acting under color of law.

11.     Defendant John or Mary Doe 2 ("Defendant Doe 2") is a police officer, spokesperson, and/or social media account administrator for the CDP whose identity is not currently known to Plaintiff.  Accordingly, Plaintiff is suing Defendant Doe 2 in his or her individual capacity.  At all times material to this Complaint, Defendant Doe 2 was an employee of the CDP, located in Franklin County, Ohio, and a "person" under 42 U.S.C § 1983 acting under color of law.


## III.     FACTUAL ALLEGATIONS

12.     At approximately 10:00 p.m. on July 11, 2018, Plaintiff Ms. Clifford was scheduled to appear at an adult entertainment venue known as "Sirens" in Columbus, Ohio

13.     As noted above, Ms. Clifford is a public figure engaged in a high profile public dispute with the President of the United States of America, Donald John Trump ("President Trump"), with whom she alleges that she had a sexual affair.

14.     Ms. Clifford has frequently and publicly spoken out against President Trump, making statements that she had a sexual affair with him in 2006 and that President Trump's lawyer, Michael Cohen, paid her one-hundred and thirty-thousand dollars ($130,000) to not say anything about the affair during President Trump's 2016 presidential campaign.  Specifically, in March 2018, Ms. Clifford sued to be released from a non-disclosure agreement relating to the affair and, on March 25, 2018, she discussed the matter on "60 Minutes" to a record television audience.  Mr. Trump and his supporters have since sought to disparage her character and credibility.

Case 2:19-cv-00388-WHW-EPD Doc #: 64-1 Filed: 01/02/20 Page: 32 of 33 PAGEID #: 523
Case 2:18-cv-00893-SLD-TPW Document 63-20 Filed 03/01/20 Page 4 of 31 - Page ID
#:1544

15.     Defendant Officers belonged to a group of officers from the Vice Unit who were avowed supporters of President Trump.  To wit:

16.     Defendant Keckley is registered as a Republican in the Ohio voter rolls.

17.     Defendant Praither is also registered as a Republican in the Ohio voter rolls.

18.     Defendant Rosser is a known Republican supporter of President Trump.

19.     Before July 11, 2018, Defendant Rosser maintained a Facebook profile under the alias of "Stevo Shaboykins." Defendant Rosser regularly posted supporting images for President Trump on the Stevo Shaboykins Facebook page.  One image was labeled "Cops for Trump Pence Make America Great Again," and included the text: "Keep your Elephant Keep your Donkey We Have a Lion (Trump)," and "So Trump is mentally ill…he built a multi-billion dollar empire that spread across the world, was able to beat 17 of the best and brightest Republican candidates, turns around to beat the 'most qualified woman of our time' for the presidency, then in his first year in office causes the stock market to climb to heights never seen before in history, lowered unemployment, almost wiped out ISIS, restoring law and order, all while working with a hostile Congress and the media attacking him 24/7? Perhaps we need more mentally ill people."

20.     At some point in time, before July 11, 2018, Defendant Officers became aware that Ms. Clifford was scheduled to visit Sirens.

21.     Defendant Officers believed that Ms. Clifford was damaging President Trump and they thereafter entered into a conspiracy to arrest her during her performance in Columbus in retaliation for the public statements she had made regarding President Trump.

22.     Defendant Officers also arrested Ms. Clifford because they believed that doing so would damage her credibility in relation to any statements she had make or might in the future make against President Trump.  Damaging Ms. Clifford's credibility in this way was another purpose of Defendant Officers' conspiracy.

23.     Defendant Officers subsequently decided to arrest Ms. Clifford and to falsely charge her with violating R.C. 2907.40 when she performed at Sirens.

Case 2:19-cv-00160-WHW-EPS Doc # 64-1 Filed: 06/03/20 Page: 32 of 53 PAGEID # 624
Case 2:18-cv-00693-SLD-FMP Document 63-2 Filed: 03/04/20 Page: 5 of 31 Page ID
#:1545

24.     Defendant Keckley performed extensive research on Ms. Clifford and her performance schedule prior to her appearance at Sirens.

25.     E-mails sent from Defendant Keckley's personal account to her work account contained screenshots of an article announcing the event, a picture of Ms. Clifford and President Trump together, a link to a YouTube video of Ms. Clifford receiving the keys to West Hollywood, and a screenshot of the location of Sirens on a map.

26.     Defendant Officers determined in advance that if Ms. Clifford did not meet all of the elements of R.C. 2907.40, they would either fabricate the missing elements or deliberately omit elements on any criminal complaint against her.

27.     Further, Defendant Officers determined in advance that, at the same time they arrested Ms. Clifford, they would also arrest at least two other individuals working at Sirens for a violation of R.C. 2907.40 to cover for their arresting Ms. Clifford. Defendant Officers calculated that, if they arrested other employees, they would be able to deny that Ms. Clifford's arrest was politically-motivated and unjustified by circumstances on the ground.

28.     On the night Ms. Clifford was scheduled to appear at Sirens on July 11, 2018, Defendant Officers attended the event undercover, each paying a seventy-five dollar ($75) cover charge to acquire V.I.P. access to Ms. Clifford during her performance.

29.     Several of the Defendant Officers sat in a booth together, while other Defendant Officers were posted at other locations at the establishment.

30.     Several of the Defendant Officers consumed alcoholic beverages while on the job, spending at least seven hundred and sixty eight dollars ($768) of taxpayer money on their exploit, including one-hundred and twenty-nine dollars ($129) for alcohol and six-hundred and thirty-nine dollars ($639) for tips and cover charges.

31.     Prior to 10:00 p.m., Defendant Officers invoked their V.I.P. privileges and entered the V.I.P. area to personally meet Ms. Clifford.

32.     During the V.I.P. interaction, Defendant Praither alleged Ms. Clifford "put both hands on officers [sic] buttocks, both hands on officers [sic] breast, then put her breast in officers [sic] face."

33.     Defendant Praither, based upon these allegations, arrested Ms. Clifford, falsely alleging a violation of R.C. 2907.40.

34.     Pursuant to their conspiracy, Defendant Officers proceeded to arrest Ms. Panda and Ms. Walters for alleged violations of R.C. 2907.40 at or about the same time.

35.     Defendant Officers arrested, handcuffed, detained, and transported Ms. Clifford in a police cruiser to a police staging location where she remained handcuffed. She was then transported to the Franklin County Correctional Center where she was placed in a holding cell, booked, fingerprinted, and photographed.

36.     Defendants charged Ms. Clifford, Ms. Panda, and Ms. Walters with first-degree misdemeanor violations of R.C. 2907.40(C)(2), as alleged in each individual complaint against them.

37.     The Columbus Police Department Vice Unit enforces a very limited set of laws.

38.     Vice Unit officers, including Defendant Officers, are intimately aware of all of the elements for the limited set of laws they are charged with enforcing.

39.     In filing criminal complaints, Defendant Officers have access to and routinely use a book containing the elements of City and State criminal offenses, including the elements associated with R.C. 2907.40(C)(2).

40.     A violation of R.C. 2907.40(C)(2) requires: (1) an employee who regularly appears nude or seminude; (2) at the sexually oriented business; (3) while they are nude or seminude; (4) to touch another employee, a patron, or allow themselves to be touched by a patron.

41.     Accordingly, R.C. 2907.40(C)(2) requires that the person charged appear nude or semi-nude at the establishment in question *on a regular basis*. But Ms. Clifford was a special guest performer at Sirens, who had not appeared regularly at the establishment, while Ms. Panda

had just started the night before. Additionally, neither Ms. Panda or Ms. Walters had been nude or semi-nude, in order to violate the statute.

42.     Immediately following the arrests of Ms. Clifford, Ms. Panda, and Ms. Walters, at 3:47 a.m., Defendant Keckley sent an e-mail to Defendant Rosser, Defendant Praither, Detective Scott Soha, and Lieutenant Robert Kemmerling, stating, "Attached are the complaints from our arrests at Sirens" with attachments of the individual complaints against each woman.

43.     At 3:50 a.m. on July 12, 2018, Defendant Keckley forwarded the abovementioned e-mail with the attached complaints to Lieutenant Babcock, stating, "LT You're Welcome!!!!!I work Vice now !!:D It was Me, Rosser, Lancaster, and Praiter [sic]; Please Please Don't post my name on Face Book [sic] !!:D Thank me in person later."

44.     Defendant Keckley asked that her name not be published on Facebook in connection with these arrests out of concern that her political motivation for the arrests would be discovered.

45.     At 4:03 a.m., Defendant Keckley forwarded the above-mentioned e-mail with the attached complaints to co-workers Elisabeth Beine, Lowell Whitt, Eric Poliseno, Jason Arnold, and Jason Vore, stating, "I got elements along with Susan and Lancaster we arrested Stormy this morning, she is in jail."

46.     At 4:05 a.m., Defendant Keckley forwarded the same e-mail with the attached complaints to her husband, Shane Keckley, stating, "It is all over CNN. I wanted you to know before everyone contacts you … I, Susan and Lancaster got elements and arrested Stormy Daniels this morning she is in jail."

47.     Later that evening, co-worker Jason Arnold replied all to Defendant Keckley, stating, "Great job!!!!Let me know how that goes for ya…".

48.     Defendant Keckley's e-mails, including the ones from the prior night showing research on Ms. Clifford, her upcoming performance at Sirens, and her affiliation with President Trump, as well as the ones post-arrest stating that she "got elements" to arrest Ms. Clifford evidence a premeditated, politically motivated reason to arrest Ms. Clifford.

49.     Shortly after the arrests, Defendant Rosser deleted his "Stevo Shaboykins" Facebook profile out of concern that his political motivation for arresting Ms. Clifford would be discovered.

50.     At 1:36 p.m. on July 12, 2018, Columbus Division of Police released a statement from Chief Kim Jacobs ("Chief Jacobs") which said, "Vice personnel working last night believed they had probable cause that the state law regulating sexually-oriented businesses was violated; however, one element of the law was missed in error and charges were subsequently dismissed."

51.     Contrary to that post, which was intended to divert attention or inquiry, Defendant Officers never had probable cause to arrest Ms. Clifford, nor could they believe they did. This is because Defendant Officers were well aware that they had deliberately fabricated and/or omitted the elements of R.C. 2907.40(C)(2) to arrest Ms. Clifford and the other women.

52.     Ms. Panda's and Ms. Walters' charges were dismissed at the unilateral request of the prosecutor due to lack of probable cause on July 18, 2018, six days after charges were filed against them.

53.     On July 12, 2018 at 7:29 a.m., Defendant Doe 2 posted a statement on the official Twitter account for the City of Columbus Division of Police, "Columbus Ohio Police (@ColumbusPolice)," entitled "Columbus Police Make Three Arrests at Adult Entertainment Club." The July 12, 2018 statement read, "As part of a long-term investigation into allegations of human trafficking, prostitution, along with other vice related violations, Columbus Police arrested three individuals from Club Sirens at 6190 Cleveland Ave., during the early morning hours of July 12, 2018."

54.     The above-mentioned statement is entirely false. Defendant Officers were not at Sirens investigating any human trafficking, prostitution, or other vice related violations, nor were the women employees of Sirens arrests in any way related to such an "investigation". Defendant Doe 2's publication of this statement furthered the conspiracy of Defendant Officers to conceal their retaliatory motive for the arrests.

55.    Plaintiff's rights to be free from unlawful search and seizure and from arrest and prosecution without probable cause and/or based on false statements were, at the time of their actions or omissions, clearly established rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

56.    Defendants' acts or omissions were done with malicious purpose, in bad faith, or in a wanton or reckless manner.

57.    As a proximate result of Defendants' acts, Plaintiff has suffered and continues to suffer damages, including loss of liberty, legal and other expenses, physical pain and suffering, mental and emotional anguish, embarrassment, fear, and great inconvenience.

58.    But for Defendant Officers' commitment to President Trump and retaliatory motivation against Ms. Clifford, no arrest, prosecution, or defamation would ever have happened.

## III.    CLAIMS FOR RELIEF

### A. <u>First Cause of Action: False Arrest in Violation of the Fourth and Fourteenth Amendments and Ohio Common Law</u>

59.    Paragraphs 1 through 58 above are realleged and incorporated herein.

60.    Defendants have deprived Ms. Clifford of her civil, constitutional and statutory rights under color of law and have conspired to deprive her of such rights and are liable to plaintiff under 42 USC § 1983.

61.    Defendants' conduct deprived Ms. Clifford of her right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Defendants' conduct also deprived Ms. Clifford of her right to due process of law, pursuant to the Fourteenth Amendment of the United States Constitution.

62.    By arresting Ms. Clifford when, at the moment of the arrest the facts and circumstances within the knowledge of the Defendants Officers were insufficient to warrant a reasonable person to believe Plaintiff had committed a crime, Defendant Officers committed a

false arrest. Defendants falsely arrested plaintiff and failed to intervene in each other's obviously illegal actions.

63.     Ms. Clifford has been damaged as a result of defendant' wrongful acts.

## B. <u>Second Cause of Action: Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments and Ohio Common Law</u>

64.     Paragraphs 1 through 58 above are realleged and incorporated herein.

65.     By making, influencing, and/or participating in the decision to prosecute Ms. Clifford without probable cause, which prosecution was resolved in her favor by dismissal at the unilateral request of the prosecutor due to lack of probable cause, and doing so with knowingly or recklessly made false statements in their paperwork, Defendant Officers maliciously prosecuted Ms. Clifford, resulting in her deprivation of liberty for more than five hours after their initial seizure.

66.     Ms. Clifford has been damaged as a result of defendant' wrongful acts.

## C. <u>Third Cause of Action: Civil Conspiracy to Violate the Fourth and Fourteenth Amendments</u>

67.     Paragraphs 1 through 58 above are realleged and incorporated herein.

68.     Defendants conspired against Ms. Clifford in order to conceal their retaliation against her by depriving her of their Fourth and Fourteenth Amendment rights and taking steps to further the conspiracy, such as arresting her without probable cause, unlawfully searching and seizing her persons and property, making knowingly or recklessly false statements in her paperwork, making, influencing, and/or participating in the decision to prosecute her without probable cause, and making public false defamatory statements, thereby causing Plaintiff injury.

69.     Ms. Clifford was injured as a result of defendant' conspiracy.

### D.  <u>Fourth Cause of Action: Abuse of Process in Violation of Ohio Common Law</u>

70.     Paragraphs 1 through 58 above are realleged and incorporated herein.

71.     In the alternative, by commencing criminal prosecution in proper form and with probable cause and perverting that prosecution to retaliate against Ms. Clifford and thereby cause her injury in their efforts to conceal that retaliation, Defendant Officers committed abuse of process.

### E.  <u>Fourth Cause of Action: Abuse of Process in Violation of Ohio Common Law</u>

72.     Paragraphs 1 through 58 above are realleged and incorporated herein.

73.     By maliciously releasing false statements to public newspapers and broadcasters and on social media platforms strongly implying Ms. Clifford was engaged in immoral conduct or wrongdoing, and/or vice related violations; and by announcing the details of her arrests for "illegal sexually oriented activity in a sexually oriented business," Defendants defamed Ms. Clifford causing injury to her reputation and exposing her to contempt, ridicule, shame, and disgrace in the community.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

>    a.   declare that Defendants have, through false arrest and/or malicious prosecution, violated Plaintiff's Fourth and Fourteenth Amendment rights, conspired against Plaintiff to violate those rights, abused process, and/or defamed her; and

    b.   order more than $1,000,000 in compensatory damages; more than $1,000,000 in punitive damages; prejudgment and post-judgment interest; costs; attorneys' fees, and such other relief as the Court may deem appropriate.

Respectfully Submitted,

/s/ *Chase A. Mallory*
Chase A. Mallory (0084728)
Chase@SabolMallory.com
SABOL MALLORY, LLC
743 South Front Street
Columbus, Ohio 43206
phone: (614) 300-5088
fax: (614) 636-4545

/s/ *Daniel J. Sabol*
Daniel J. Sabol (0081403)
Dan@SabolMallory.com
SABOL MALLORY, LLC
743 South Front Street
Columbus, Ohio 43206
phone: (614) 300-5088
fax: (614) 636-4545

/s/ *Michael J. Avenatti*
Michael J. Avenatti (applying pro hac)
mavenatti@eoalaw.com
AVENATTI & ASSOCIATES, APC
1910 W Sunset Blvd, #450
Los Angeles, CA 90026
phone: (949) 706-7000

## **JURY DEMAND**

Plaintiff hereby demands a trial of all causes by jury.

By: /s/ *Chase A. Mallory*
Chase A. Mallory (0084728)

Case: 2:19-cv-00119-MHW-EPD Doc #: 61-1 Filed: 05/05/20 Page: 37 of 53 PAGEID #: 432
Case 2:18-cv-06093-NLS-FFM Document 66-2 Filed 03/04/20 Page: 15 of 31 Page ID
#:1553

# Exhibit B

AO 451 (Rev. 12/12) Clerk's Certification of a Judgment to be Registered in Another District

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| Stephanie Clifford a.k.a. Stormy Daniels | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 18-cv-06893-SJO-FFM |
| Donald J. Trump | ) | |
| *Defendant* | ) | |

### CLERK'S CERTIFICATION OF A JUDGMENT TO BE REGISTERED IN ANOTHER DISTRICT

I certify that the attached judgment is a copy of a judgment entered by this court on *(date)*      12/11/2018      .

I also certify that, as appears from this court's records, no motion listed in Fed. R. App. P. 4(a)(4)(A) is pending before this court, the time for appeal has expired, and no appeal has been filed or, if one was filed, it is no longer pending.

Date: 9-30-2019

CLERK OF COURT

*Derek Davis*

Signature of Clerk or Deputy Clerk

1183

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

CASE NO.: **CV 18-06893-SJO (FFMx)**      DATE: **December 11, 2018**

TITLE:      **Stephanie Clifford v. Donald J. Trump et al.**

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                  Carol Zurborg
Courtroom Clerk                               Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF(S):**      **COUNSEL PRESENT FOR DEFENDANT(S):**

Present                                              Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR ATTORNEYS' FEES** [Docket No. 39]

This matter is before the Court on Defendant Donald J. Trump's ("Defendant") Motion For Attorneys' Fees And Monetary Sanctions ("Motion"), filed on October 29, 2018. Plaintiff Stephanie Clifford ("Plaintiff") filed an Opposition to Defendant's Motion on November 5, 2018 ("Opposition"). Defendant filed a Reply on November 12, 2018. The Court held argument on this matter on December 3, 2018. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

This Court's prior order contains a full summary of the factual and procedural history of this case. (*See* Order Granting Defendant Donald J. Trump's Special Motion To Dismiss/Strike Plaintiff's Complaint ("Special Motion") at 1-3, ECF No. 36.)

On October 15, 2018, this Court granted Defendant's Special Motion without leave to amend the Complaint. (*See generally* Order Granting Special Motion.) The Court concluded that Mr. Trump's tweet was non-actionable rhetorical hyperbole and therefore, was a protected opinion. (Order Granting Special Motion at 10-12.) The Court also granted Defendant attorneys' fees under the Texas Citizens Participation Act ("TCPA"), the law that governed the Special Motion. (Order Granting Special Motion at 14.)

On December 3, 2018, this Court held argument on the instant Motion. (*See* Tr. of Proceedings, ECF No. 45.) The Court subsequently submitted this matter.

///
///
///
///
///

Case 2:18-cv-00493-MLG-FFM Doc # 61-1 Filed 05/05/20 Page 40 of 53 PageID # 435
Case 2:18-cv-06893-SJO-FFM Document 65-2 Filed 05/04/20 Page 18 of 31 Page ID #:1556
Case 2:18-cv-06893-SJO-FFM Document 55 Filed 12/11/18 Page 2 of 9 Page ID #:1339

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** **CV 18-06893-SJO (FFMx)**        **DATE:** **December 11, 2018**

II.    ANALYSIS

    A.    Legal Standard

        1.    Attorneys' Fees

As the prevailing party on a TCPA anti-SLAPP motion, Defendant is entitled to attorneys' fees and costs. The TCPA provides, in pertinent part, that when a court grants an anti-SLAPP motion, the court **"shall** award to the moving party: (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code § 27.009(a)(1). The language of the TCPA is mandatory, not permissive, on the question of attorneys' fees. "[T]he TCPA **requires** an award of 'reasonable attorney's fees' to the successful movant [on an anti-SLAPP motion]." *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016).

"A 'reasonable' attorney's fee 'is one that is not excessive or extreme but rather moderate or fair.' That determination rests within the court's sound discretion, but that discretion, under the TCPA, does not also specifically include considerations of justice and equity." *Sullivan*, 488 S.W.3d at 299 (Tex. 2016) (internal citations omitted) (quoting *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010) and Tex. Civ. Prac. & Rem. Code § 27.009(a)(1)). To calculate a reasonable attorneys' fees award, Texas courts generally apply the lodestar method, the same standard used by federal courts. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). "Under the lodestar/multiplier method, the Court first calculates the 'lodestar' by multiplying the reasonable hours expended by a reasonable hourly rate. The Court may then enhance the lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). *See also Blum v. Stenson*, 465 U.S. 886, 898–901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination). The Court excludes from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

        2.    Standard For Award Of Sanctions

Defendant also seeks sanctions against Plaintiff pursuant to the TCPA. (Tr. of Proceedings 5:3-8.) In addition to granting attorneys' fees and costs to a prevailing party on an anti-SLAPP motion, the TCPA provides for "sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code § 27.009(a)(2)). Although the TCPA does not set out how sanctions are to be calculated, Texas courts have determined that "to

Case 2:18-cv-00149-MLW-FRD Document 61-1 Filed 05/05/20 Page 41 of 53 PageID #: 436
Case 2:18-cv-06893-SJO-FFM Document 66-2 Filed 03/04/20 Page 53 of 61 Page ID #:1557
Case 2:18-cv-06893-SJO-FFM Document 49 Filed 12/11/18 Page 3 of 9 Page ID #:1340

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.:  __CV 18-06893-SJO (FFMx)__          DATE:  __December 11, 2018__

comply with the constitutional guarantee of due process, (1) there must be a direct relationship between the offensive conduct and the sanction imposed, and (2) the sanction must be just and not excessive."  *Landry's, Inc. v. Animal Legal Def. Fund*, No. 14-17-00207-CV, 2018 WL 5075116, at *17 (Tex. App. Oct. 18, 2018).  When adjudicating a request for sanctions under the TCPA, Texas courts often look to Texas' Chapter 10 sanctions for guidance.  Chapter 10 authorizes trial courts to impose sanctions against litigants for signing frivolous pleadings and motions.  *See id*.  In assessing Defendant's request for sanctions, this Court also looks to the interpretation of Rule 11 of the Federal Rules of Civil Procedure.  *See Low v. Henry*, 221 S.W.3d 609, 615 (Tex. 2007) ("The language of section 10.001 of the Texas Civil Practice and Remedies Code tracks much of the language in Federal Rule of Civil Procedure 11(b). . . .")

    B.    Application

The Court begins by reviewing Defendant's request for attorneys' fees and costs and then addresses Defendant's request for sanctions against Plaintiff.

    1.    What Attorneys' Fees and Costs May Defendant Request?

The Court first determines whether Defendant can recover fees for the entirety of this litigation or whether Defendant can recover fees only for the Special Motion and the resulting motion for fees. Defendant seeks $389,403.11 in attorneys' fees and costs, accounting for 580.75 hours of attorney time. (*See* Second Supp. Decl. of Charles Harder In Support of Motion ("Harder Second Supp. Decl.") ¶ 4,  ECF No. 43.)  Defendant divides his request into four distinct categories of fees:  (1) initial strategy, (2) motion to transfer, (3) motion to strike, and (4) motion for fees. (*See* Declaration of Charles Harder ("Harder Decl."), Ex. A at 18, ECF No. 39-2.)  Plaintiff insists that Defendant can only recover for the latter two categories because the former two categories did not involve "defending" against Plaintiff's legal action for defamation.  (Opp'n 11-15.)

The TCPA requires an award of fees "incurred in defending against the legal action."  Tex. Civ. Prac. & Rem. Code § 27.009(a)(1).  Although the terms "defending" and "legal action" are not defined anywhere in the statute, there is little dispute that the TCPA does not entitle a prevailing party to recover fees for expenses incurred in litigating causes of action that are unconnected to a defamation claim or a motion to strike.  For example, in a situation where a plaintiff files a complaint bringing a defamation claim based on one set of facts and a claim for breach of contract based on an independent set of facts, a defendant who prevails on a motion to strike the defamation claim can only recover attorneys' fees incurred in defending against the defamation claim, not fees incurred in defending against the claim for breach of contract.  *See Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1184 (S.D. Cal. 2008) ("All expenses incurred on

Case 2:18-cv-00149-MLW-FRD Doc #: 61-1 Filed: 05/05/20 Page: 42 of 53 PAGE ID #: 437
Case 2:18-cv-06893-SJO-FFM Document 66-2 Filed 05/04/20 Page 29 of 53 Page ID #:1558
Case 2:18-cv-06893-SJO-FFM Document 48 Filed 12/11/18 Page 4 of 9 Page ID #:1341

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | Priority | _____ |
| Send | _____ |
| Enter | _____ |
| Closed | _____ |
| JS-5/JS-6 | _____ |
| Scan Only | _____ |

CASE NO.:  **CV 18-06893-SJO (FFMx)**          DATE:  **December 11, 2018**

common issues of fact and law qualify for an award of attorneys' fees under the anti-SLAPP statute and those fees need not be apportioned.").[1]

Other situations may be more complicated than this example.  In the instant case, Plaintiff only brought a single defamation cause of action against Defendant.  However, the parties briefed and began to litigate a procedural motion, a motion to transfer venue, prior to this Court adjudicating the substance of Defendant's Special Motion.  The TCPA does not provide guidance as to whether the terms "defending" and "legal action" encompass only litigation connected to a motion to strike or all of the motions required in the process of litigating a defamation cause of action.

Existing case law favors Defendant's position.  In *American Heritage Capital v. Gonzalez*, a Texas Court of Appeals held that a defendant was entitled to costs and fees connected to an exchange of emails with a plaintiff prior to the plaintiff formally joining the defendant on a defamation claim. *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 880 (Tex. App. 2014), *disapproved of on other grounds by Hersh v. Tatum*, 526 S.W.3d 462 (Tex. 2017) (internal citations omitted).  The *American Heritage Capital* court concluded that "[t]o defend means to 'deny, contest, or oppose (an allegation or claim).'  In order to properly defend, a lawyer must adequately prepare by investigation, research, and drafting of pleadings. If a lawsuit is anticipated and, as in this case, comes to fruition, it is both reasonable and necessary to prepare a defense in advance." *Id.* ((quoting Black's Law Dictionary 508 (10th ed. 2014)).

In the instant case, much like *American Heritage Capital*, there was only one cause of action at issue in the litigation, Plaintiff's defamation claim against Defendant.  As a result, Defendant's preparatory work in this litigation was connected to the same subject matter adjudicated in the Special Motion.  Although Defendant filed a motion to transfer the case or in the alternative, to dismiss or stay this case, this motion was connected to "defending" against the defamation claim.  The motion to transfer sought to place Defendant in a more advantageous position, to be able to defend the defamation claim and the other lawsuits against him in a single forum.  The motion to transfer constituted part of Defendant's strategy to "oppose" the defamation action filed by Plaintiff. *Id.* ((quoting Black's Law Dictionary 508 (10th ed. 2014)).  The Court thus concludes that Defendant is entitled to attorneys' fees and costs connected to the entire course of this litigation, including (1) initial strategy, (2) motion to transfer, (3) motion to strike, and (4) motion for fees. *Cf. Kearney*, 553 F. Supp. 2d at 1184 ("Here, because defendants achieved the dismissal of all

---

[1] Although *Kearney* involved the California anti-SLAPP statute, not the TCPA, the *Kearney* court's reasoning is persuasive to this Court. "The California statute—section 425.16 of the California Code of Civil Procedure—was one of the earliest 'anti-SLAPP' laws and has been a primary model or influence on similar laws subsequently enacted in other states, including, directly or indirectly, the TCPA." *Serafine v. Blunt*, 466 S.W.3d 352, 386 (Tex. App. 2015).

Case 2:18-cv-06893-MLW-FRD Doc. #: 61-1 Filed: 05/05/20 Page: 43 of 53 PAGEID #: 438
Case 2:18-cv-06893-SJO-FFM Document 60-2 Filed 03/04/20 Page 28 of 83 Page ID #:1559
Case 2:18-cv-06893-SJO-FFM Document 48 Filed 12/11/18 Page 5 of 9 Page ID #:1342

Priority     ____
Send     ____
Enter     ____
Closed     ____
JS-5/JS-6     ____
Scan Only     ____

**CASE NO.:   CV 18-06893-SJO (FFMx)**      **DATE:   December 11, 2018**

of plaintiff's claims—both state and federal claims on some of the same or similar legal grounds—awarding defendants all of their attorneys' fees associated with the right to petition, would advance the public policy underlying the anti-SLAPP statute, which was enacted 'to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation.'").

Another Texas Court of Appeals case, *Cruz v. Van Sickle*, further supports Defendant's position. *See* 452 S.W.3d 503 (Tex. App. 2014). The issue in *Van Sickle* was whether a prevailing anti-SLAPP defendant could recover attorneys' fees connected to both the filing of an anti-SLAPP motion and the subsequent motion for attorneys' fees and costs. The court concluded that the defendant could recover both sets of fees because courts "are required to construe [the TCPA] liberally to effectuate its purpose and intent fully." *Id.* at 527. When this principle is applied to the instant case, the TCPA mandates that Defendant ought to recover all four sets of attorneys' fees and costs connected to defending this litigation.

Although Plaintiff cites to California cases that purportedly prevent Defendant from recovering for initial strategy and the motion to transfer, Plaintiff's chosen cases are unavailing. Plaintiff, for example, cites to language in one decision stating that a prevailing defendant "may recover fees and costs only for the motion to strike, not the **entire litigation**." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008) (emphasis added). Although *Christian Research Institute* did not define "entire litigation," the Court understands that in some lawsuits, a defamation claim will not be the "entire litigation" but only one cause of action amongst several. In such cases, a defendant prevailing on an anti-SLAPP motion cannot recover attorneys' fees and costs for the "entire litigation," but rather only the attorneys' fees and costs connected to defending the defamation cause of action. In the instant case, by contrast, the defamation cause of action is the only cause of action in the operative complaint, and by prevailing on the Special Motion, Defendant has ended this case. "[W]here an anti-SLAPP motion disposes of an 'entire lawsuit,' as opposed to only some of the claims in a lawsuit, 'all of the activity by [the] attorneys' in connection with the successful motion is deemed to have 'occurred in the context of,' and to have been 'inextricably intertwined with, the anti-SLAPP motion.'" *Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*, No. CV 11-303 PSG (PLAX), 2012 WL 12883819, at *2 (C.D. Cal. June 12, 2012). Accordingly, there is little dispute that Defendant is entitled to attorneys' fees and costs connected to his defense against Plaintiff's defamation claim, which encompasses: (1) initial strategy, (2) motion to transfer, (3) motion to strike, and (4) motion for fees.

    2.    <u>Is Defendant's Request Reasonable?</u>

Having concluded that Mr. Trump is entitled to all four sets of attorneys' fees and costs that he seeks, the Court next addresses whether Defendant's request is reasonable under the lodestar method. This involves answering two related questions. First, are Defendant's requested hourly

Case 2:19-cv-00199-MHW-ERD Document 61-1 Filed 05/05/20 Page 44 of 52 PAGEID #: 439
Case 2:18-cv-06893-JLS-FFM Document 66-2 Filed 03/04/20 Page 22 of 65 Page ID #:1560
Case 2:18-cv-06893-SJO-FFM Document 51 Filed 12/11/18 Page 6 of 9 Page ID #:1343

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

**CASE NO.:  CV 18-06893-SJO (FFMx)**          **DATE:**  December 11, 2018

rates per attorney reasonable?   Second, are the hours expended per task by attorney reasonable?  The Court addresses these questions in turn.

a.  <u>Rates Charged</u>

Defendant claims the following rates for the attorneys that worked on this matter: attorney Charles Harder (partner) charges $841.64 per hour; attorney Ryan J. Stonerock (partner) charges $756.49 per hour; attorney Dilan A. Esper (senior attorney) charges $611.99 per hour; attorney Steven H. Frackman (associate) charges $586.50 per hour; and attorney Ted S. Nguyen (associate) charges $307.60 per hour.  (Mot. at 14-16.)

Federal courts determine a reasonable hourly rate based on the "experience, skill, and reputation of the attorney[s] requesting fees."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).  Federal courts look to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id*. at 1210–11.  Similarly, in analyzing the reasonableness of the rates charged under the TCPA, Texas courts generally consider several factors, including:  (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.  *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).  (*See also* Tr. of Proceedings at 6:19-7:2.)

In reviewing the rates charged by Defendant's attorneys, the Court agrees with Defendant that his attorneys are incredibly qualified, and that the law firm of Harder LLP has specific expertise in the fields of media and defamation law.  (Mot. at 14-16.)  The Court also is mindful of the fact that the instant litigation is unique in its nature and scope.  It involves a defamation claim against the sitting President of the United States based on a tweet issued by the President from his personal Twitter account.  (*See* Tr. of Proceedings at 11:8-15.)  The President has used this Twitter account extensively, both during his campaign and afterwards.  The litigation before this Court therefore impacts what the President may or may not say in a public forum.

Based on the unique nature of this litigation and the Court's familiarity with the fees charged in this jurisdiction, the Court concludes that Defendant's rate requests are reasonable.  In similar First Amendment anti-SLAPP litigation involving highly qualified attorneys, a court in the Northern District of California held that experienced partners were entitled to between $880 and $995 per hour, senior associates were entitled to between $450 and $535 per hour, and junior associates

Case 2:18-cv-00423-MLW-FFM Doc #: 61-1 Filed: 05/05/20 Page: 45 of 53 PAGE#D #: 440
Case 2:18-cv-06893-SJO-FFM Document 66-2 Filed 05/04/20 Page 23 of 31 Page ID #:1561
Case 2:18-cv-06893-SJO-FFM Document 45 Filed 12/11/18 Page 7 of 9 Page ID #:1344

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

**CASE NO.:  CV 18-06893-SJO (FFMx)**          **DATE:  December 11, 2018**

were entitled to $355 per hour.  *See Open Source Sec., Inc. v. Perens*, No. 17-CV-04002-LB, 2018 WL 2762637, at *7 (N.D. Cal. June 9, 2018).  *See also Salazar v. Midwest Servicing Grp., Inc.*, No. CV 17-0137 PSG (KSX), 2018 WL 4802139, at *7 (C.D. Cal. Oct. 2, 2018) ("In Los Angeles, partners in litigation have an hourly rate ranging from $340 to $745."); *Braden v. BH Fin. Servs., Inc.*, No. C 13-02287 CRB, 2014 WL 892897, at *6 (N.D. Cal. Mar. 4, 2014) (holding that partners in an anti-SLAPP motion were entitled to $610 per hour, and associates were entitled to $310 per hour); *Sarver v. Hurt Locker, LLC*, No. 210CV09034JHNJCX, 2011 WL 13135126, at *3 (C.D. Cal. Dec. 8, 2011) (collecting cases).

      b.    Hours Spent

"A court may award attorneys' fees only for the number of hours it concludes were reasonably expended on the litigation."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  The Court next reviews the number of hours that Defendant claims that his attorneys spent on each task to determine if the hours requested are reasonable.  "[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure 'as a practical means of trimming the fat from a fee application.'"  *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (quoting *New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983)).

Having reviewed the billing records submitted by Defendant, the Court reduces the total amount in attorneys' fees and costs that Defendant claims by 25%.  *See Wynn v. Chanos*, No. 14-CV-04329-WHO, 2015 WL 3832561, at *6 (N.D. Cal. June 19, 2015), *aff'd*, 685 F. App'x 578 (9th Cir. 2017) (reducing attorneys' fees and costs by 25%).  The hours requested by Defendant are excessive for two reasons that parallel the *Wynn* case.

First, Defendant could have researched and briefed this case with less involvement from partners and greater use of highly qualified associates.  *See Wynn*, 2015 WL 3832561 at *5.  To litigate Plaintiff's defamation claim, Defendant used two partners and one senior associate in addition to two junior associates.  Defendant could have streamlined litigation by distributing more work to the junior associates.  (*See* Initial Standing Order at A-13, ECF No. 29 ("The Court strongly encourages parties to permit less experienced lawyers (*i.e.*, lawyers with five or fewer years of experience) to actively participate in the proceedings by presenting argument at motion hearings or examining witnesses at trial."))

Second, the descriptions of the work performed suggest that the hours spent on tasks by Defendant's attorneys were excessive.  For example, Defendant's attorneys spent significant time conducting legal research for both the motion to transfer and the motion to strike.  (*See, e.g.*, Harder Decl., Ex. A at 6 (billing time for "legal research" connected to the Motion To Transfer); Harder Decl., Ex. A at 10 (billing time for "legal research" connected to the Anti-SLAPP Motion)). The Court agrees with Defendant that preparing a motion to transfer requires a significant amount

Case 2:19-cv-00199-MHW-ERD Doc #: 61-1 Filed: 05/05/20 Page: 46 of 53 PAGEID #: 441
Case 2:18-cv-06893-JLS-FFM Document #: 2 Filed: 05/04/20 Page: 24 of 31 Page ID #:1562
Case 2:18-cv-06893-SJO-FFM Document #: 68 Filed 12/11/18 Page 8 of 9 Page ID #:1345

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 18-06893-SJO (FFMx)</u>          **DATE:** <u>December 11, 2018</u>

of factual research. (*See* Tr. of Proceeding at 19:14-24.) That being said, with Harder LLP's vast experience in the area of defamation law and federal court litigation, billing substantial hours for **legal research** connected to a motion to strike or a motion to transfer is not reasonable. *See Wynn*, 2015 WL 3832561 at *5. Moreover, in briefing the Special Motion, Defendant submitted significant extraneous evidence, including a detailed list of Plaintiff's movie history and filmography, which was unnecessary to this Court's decision-making. Ultimately, Defendant's counsel did not need to spend as much time as they did conducting legal research and compiling factual exhibits that would not properly be before this Court. (*See, e.g.*, Harder Decl., Ex. A at 10 (billing time for "review and analysis of exhibits" and "draft Declaration of C. Harder in support of Motion").)

As the *Wynn* court concluded,"given the sophistication of counsel and their substantial billing rates, this case should have been litigated much more efficiently without sacrificing quality." *Wynn*, 2015 WL 3832561 at *6. The Court reduces the total amount of attorneys' fees and costs claimed by Defendant by 25%. *See id*. Defendant is entitled to attorneys' fees and costs of **$292,052.33**, a 25% reduction of the total fees and costs claimed of $389,403.11.

    C.    <u>Sanctions Under TCPA</u>

Defendant finally seeks sanctions against Plaintiff for bringing frivolous litigation against him. Under the TCPA, sanctions **shall** be awarded sufficient "to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(2). The TCPA is silent as to how to evaluate sanctions, and few courts provide guidance as to this issue. *See Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *12 (Tex. App. Apr. 11, 2014) (noting that "no court has addressed a sanctions award under the TCPA"); *Am. Heritage Capital*, 436 S.W.3d at 881 (awarding a sanction amount of $15,000, which was equal to the amount of attorneys' fees). Defendant points to *American Heritage Capital* for the proposition that this Court should double the attorneys' fee award to deter frivolous lawsuits by Plaintiff. (*See* Tr. of Proceedings at 32:3-8.)

While recognizing that some Texas courts have doubled attorneys' fees to deter frivolous SLAPP litigation, the Court declines to impose significant additional sanctions here. Plaintiff is liable to Defendant for substantial attorneys' fees, which is already a means to deter her from bringing SLAPP litigation in the future. *See Truesdell v. S. California Permanente Med. Grp.*, 209 F.R.D. 169, 175 (C.D. Cal. 2002) (holding that a court must consider the deterrent effect of an award of attorneys' fees in formulating sanctions under Rule 11); *Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1221 (S.D. Cal. 2002) ("Thus, **to deter such chilling**, 'a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.'" (emphasis added) (citing Cal. Civ. P. Code § 425.16(c)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority   ——
Send   ——
Enter   ——
Closed   ——
JS-5/JS-6   ——
Scan Only   ——

**CASE NO.:**   <u>CV 18-06893-SJO (FFMx)</u>     **DATE:**   <u>December 11, 2018</u>

Moreover, Plaintiff is presently seeking to withdraw her other defamation claim that is before this Court, (*see* Notice of Motion And Motion To Amend Complaint in *Stephanie Clifford v. Donald Trump et al.*, No. 2:18-cv-02217-SJO-FFM, ECF No. 91), and Plaintiff has not taken legal action against Defendant despite rhetorically hyperbolic statements that Defendant has made about Plaintiff in the recent past (*see, e.g.*, Declaration of Michael Avenatti, Ex. 3, ECF No. 40-2.) Plaintiff's unwillingness to resort to litigation in light of Defendant's continuing use of rhetorical hyperbole suggests that Plaintiff is already being deterred from filing meritless defamation claims.

To the extent that the TCPA requires this Court to impose sanctions against Plaintiff, the Court orders sanctions of $1,000. Plaintiff owes Defendant **$293,052.33** in attorneys' fees, costs, and sanctions.

III.    <u>RULING</u>

The Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion, and orders Plaintiff to pay Defendant **$293,052.33** in attorneys' fees, costs, and sanctions. This case shall close.

IT IS SO ORDERED.

I hereby attest and certify on 9·30·2019
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody.

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*Derek Davis*

DEPUTY CLERK

(1099)

# Exhibit C

4/29/2020     Westlaw

## Person Overview (1)



**STEPHANIE CLIFFORD**

FORNEY, TX ▮ | KAUFMAN County

**Phone Number(s):**

**SSN:**

**DOB:**
▮ 1979

FORNEY, TX

## Addresses (11)

| Address | |
|---|---|
| **FORNEY, TX** ▮ | **KAUFMAN County** | |
| *Reported 01/01/2013 - 10/31/2017* | |
| By People Household 01/01/2013 - 10/31/2017   People Household | |
| **LANTANA, TX** ▮ | **DENTON County** | |
| *Reported 01/01/2012 - 08/08/2013* | |
| By People Household 01/01/2012 - 05/31/2013   People Household | |
| By Voters Registration   Voters Registration | |
| **TAMPA, FL** ▮ | **HILLSBOROUGH County** | |
| *Reported 01/20/2009 - 03/09/2009* | |
| By Real Property Deeds   Real Property Deeds #1 | Real Property Deeds #2 | |
| By Real Property Foreclosure   Real Property Foreclosure #1 | Real Property Foreclosure #2 | |
| **WOODLAND HILLS, CA** ▮ | **LOS ANGELES County** | |
| *Reported 11/01/2006 - 10/05/2007* | |
| By People Find 11/01/2006 - 10/05/2007   | | |
| **WOODLAND HILLS, CA** ▮ | |
| *Reported 10/05/2007 - 10/05/2007* | |
| **VALLEY VILLAGE, CA** ▮ | **LOS ANGELES County** | |
| *Reported 09/01/2007 - 10/05/2007* | |
| **WOODLAND HILLS, CA** ▮ | **LOS ANGELES County** | |
| *Reported 09/01/2007 - 09/01/2007* | |
| **WOODLAND HILLS, CA** ▮ | **LOS ANGELES County** | |
| *Reported 11/01/2006 - 12/09/2006* | |
| By Real Property Deeds   Real Property Deeds | |
| **BATON ROUGE, LA** ▮ | **EAST BATON ROUGE County** | |
| *Reported 11/13/2000 - 01/23/2003* | |
| **BATON ROUGE, LA** ▮ | **EAST BATON ROUGE County** | |
| *Reported 05/01/2001 - 01/23/2003* | |
| **BATON ROUGE, LA** ▮ | **EAST BATON ROUGE County** | |
| *Reported 05/01/1999 - 01/23/2003* | |

## Real Property Transactions (3)



Case 2:19-cv-00499-MHW-ERD Doc #: 61-1 Filed: 05/05/20 Page: 51 of 53 PAGEID #: 446
Case 2:18-cv-06093-MLS-FRM Document 6-2 Filed: 03/04/20 Page: 29 of 31 Page ID
#:1567

4/29/2020                                    Westlaw

| Property Address | Sale Price | Mortgage Amount | Recording Date | Confidence Score | View Full Text |
|---|---|---|---|---|---|
| ████ TAMPA, FL | $325,000.00 | | 03/09/2012 | 99% | Full-Text |
| ████ TAMPA, FL | $470,000.00 | $376,000.00 | 12/16/2008 | 97% | Full-Text |
| ████ WOODLAND HILLS, CA ████ | | | 05/04/2004 | 87% | Full-Text |

## All Full-Text Documents (3)

Include (5)

Real Property Transactions (3)

To Summary | Remove Document

### Real Property Transaction Record

**Source Information**

| | |
|---|---|
| **Filings Current Through:** | 03/10/2020 |
| **County Last Updated:** | 04/23/2020 |
| **Frequency of Update:** | WEEKLY |
| **Current Date:** | 04/29/2020 |
| **Source:** | CLERK OF THE CIRCUIT CT |

Owner Information

| | |
|---|---|
| **Owner(s):** | PETER J SCHOOMAKER |
| **Owner Relationship:** | MARRIED MAN |
| **Absentee Owner:** | SITUS FROM SALE (OCCUPIED) |
| **Property Address:** | ████ TAMPA, FL ████ |
| **Mailing Address:** | ████ TAMPA, FL ████ |

Property Information

| | |
|---|---|
| **County:** | HILLSBOROUGH |
| **Assessor's Parcel Number:** | ████ |
| **Property Type:** | SINGLE FAMILY RESIDENCE - TOWNHOUSE |
| **Land Use:** | SINGLE FAMILY RESIDENCE |
| **Building Square Feet:** | 3340 |

**Transaction Information**

| | |
|---|---|
| **Transaction Date:** | 02/22/2012 |
| **Seller Name:** | CLIFFORD STEPHANIE G |
| **Sale Price:** | $325,000.00 |
| **Deed Type:** | GRANT DEED |
| **Document Type:** | WARRANTY DEED |
| **Type of Transaction:** | RESALE |
| **Recording Date:** | 03/09/2012 |
| **Document Number:** | 84883 |
| **Recording Book/Page:** | BOOK 21001, PAGE 546 |
| | TITLE INSURORS/FL |
| **Construction Type:** | SALE IS A RE-SALE |
| **Purchase Payment:** | CASH |

TAX ASSESSOR RECORD may be available for this property. The record contains information from the office of the local real property tax assessor office. In addition to identifying the current owner, the record may include tax assessment information, the legal description, and property characteristics. Additional charges may apply.

TRANSACTION HISTORY REPORT may be available for this property. The report contains details about all available transactions associated with this property. The report may include information about sales, ownership transfers, refinances, construction loans, and mortgages, as



4/29/2020                                          Westlaw

To Summary | Remove Document

### Real Property Transaction Record

**Source Information**

| | |
|---|---|
| **Filings Current Through:** | 04/14/2020 |
| **County Last Updated:** | 04/23/2020 |
| **Frequency of Update:** | WEEKLY |
| **Current Date:** | 04/29/2020 |
| **Source:** | COUNTY RECORDER |

**Owner Information**

| | |
|---|---|
| **Owner(s):** | BART J CLIFFORD |
| **Owner Relationship:** | MARRIED MAN |
| **Ownership Rights:** | SEPARATE PROPERTY |
| **Additional Owner:** | CLIFFORD BART J |
| **Owner Relationship:** | MARRIED MAN |
| **Ownership Rights:** | SEPARATE PROPERTY |
| **Property Address:** | WOODLAND HILLS, CA |
| **Mailing Address:** | WOODLAND HILLS, CA |

**Property Information**

| | |
|---|---|
| **County:** | LOS ANGELES |
| **Assessor's Parcel Number:** | |
| **Property Type:** | SINGLE FAMILY RESIDENCE - TOWNHOUSE |
| **Land Use:** | SINGLE FAMILY RESIDENCE |
| **Building Square Feet:** | 1402 |

**Transaction Information**

| | |
|---|---|
| **Transaction Date:** | 04/09/2004 |
| **Seller Name:** | CLIFFORD STEPHANIE A |
| **Consideration:** | UNCERTIFIED |
| **Deed Type:** | GRANT DEED |
| **Type of Transaction:** | NOMINAL |
| **Recording Date:** | 05/04/2004 |
| **Document Number:** | 1108859 |
| **Title Company:** | CALIFORNIA TITLE CO |
| **Construction Type:** | RESALE |
| **InterFamily Transaction:** | YES |
| **Purchase Payment:** | CASH |

TAX ASSESSOR RECORD may be available for this property. The record contains information from the office of the local real property tax assessor office. In addition to identifying the current owner, the record may include tax assessment information, the legal description, and property characteristics. Additional charges may apply.

TRANSACTION HISTORY REPORT may be available for this property. The report contains details about all available transactions associated with this property. The report may include information about sales, ownership transfers, refinances, construction loans, 2nd mortgages, or equity loans based on recorded deeds. Additional charges may apply.

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

To Summary | Remove Document

### Real Property Transaction Record

**Source Information**

| | |
|---|---|
| **Filings Current Through:** | 03/10/2020 |
| **County Last Updated:** | 04/23/2020 |
| **Frequency of Update:** | WEEKLY |
| **Current Date:** | 04/29/2020 |
| **Source:** | CLERK OF THE CIRCUIT CT |

Owner Information

**Transaction Information**

| | |
|---|---|
| **Transaction Date:** | 12/02/2008 |
| **Seller Name:** | MARTINO RALPH V |
| **Sale Price:** | $470,000.00 |
| **Deed Type:** | GRANT DEED |
| **Document Type:** | WARRANTY DEED |
| **Type of Transaction:** | RESALE |



4/29/2020                                                           Westlaw

| | | | | |
|---|---|---|---|---|
| **Absentee Owner:** | SITUS FROM SALE (OCCUPIED) | | **Mortgage Term:** | 30 YEARS |
| **Additional Owner #1:** | CLIFFORD STEPHANIE G | | **Mortgage Deed Type:** | MORTGAGE DEED |
| **Owner Relationship:** | MARRIED WOMAN | | **Mortgage Date:** | 12/04/2008 |
| **Property Address:** | | | **Mortgage Due Date:** | 01/01/2039 |
| | TAMPA, FL ▮▮▮ | | **Lender Name:** | WELLS FARGO BK NA |
| **Mailing Address:** | ▮▮▮ | | **Address:** | NEWARK, NJ 07101-4701 |
| | TAMPA, FL ▮▮▮ | | **Recording Date:** | 12/16/2008 |

### Property Information

| | | | | |
|---|---|---|---|---|
| | | | **Document Number:** | 428990 |
| **County:** | HILLSBOROUGH | | **Recording Book/Page:** | BOOK 19006, PAGE 1525 |
| **Assessor's Parcel Number:** | ▮▮▮ | | | ATTORNEY ONLY |
| **Property Type:** | SINGLE FAMILY RESIDENCE - TOWNHOUSE | | **Construction Type:** | SALE IS A RE-SALE |
| | | | **Purchase Payment:** | MORTGAGE |
| **Land Use:** | SINGLE FAMILY RESIDENCE | | | |
| **Building Square Feet:** | 3340 | | | |

TAX ASSESSOR RECORD may be available for this property. The record contains information from the office of the local real property tax assessor office. In addition to identifying the current owner, the record may include tax assessment information, the legal description, and property characteristics. Additional charges may apply.

TRANSACTION HISTORY REPORT may be available for this property. The report contains details about all available transactions associated with this property. The report may include information about sales, ownership transfers, refinances, construction loans, 2nd mortgages, or equity loans based on recorded deeds. Additional charges may apply.

**End of Document**                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

### Permissible Uses (4)

DPPA - For use in connection with a civil, criminal, or arbitral legal proceeding or legal research.

GLB - For use by a person holding a legal or beneficial interest relating to the consumer.

VOTERS - Use in connection with a non-commercial purpose.

Skip Tracing for Consumer Collections Declaration - Are you using this product for skip tracing related to consumer debt collection? - No

Thomson Reuters Legal is not a consumer reporting agency and none of its services or the data contained therein constitute a 'consumer report' as such term is defined in the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. sec. 1681 et seq. The data provided to you may not be used as a factor in consumer debt collection decisioning, establishing a consumer's eligibility for credit, insurance, employment, government benefits, or housing, or for any other purpose authorized under the FCRA. By accessing one of our services, you agree not to use the service or data for any purpose authorized under the FCRA or in relation to taking an adverse action relating to a consumer application.

